Thaisheena NICHOLSON, Appellant Pro Se,

v.

TRANSAMERICA OCCIDENTAL LIFE INSURANCE COMPANY, Defendant,

Division of Employment Security, Respondent.

No. WD 62741.

Missouri Court of Appeals, Western District.

Aug. 10, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 28, 2004.

Thaisheena Nicholson, Kansas City, MO, pro se.

Ninion S. Riley, Asst. Atty. Gen., Jefferson City, for respondent.

Before BRECKENRIDGE, P.J., HOWARD and SMART, JJ.

PATRICIA BRECKENRIDGE, Judge.

Thaisheena Nicholson appeals two decisions of the Labor and Industrial Relations Commission. In one decision, the Commission found that Ms. Nicholson was disqualified from receiving unemployment benefits until she earned wages for insured work equal to ten times her weekly benefit

amount because she left work voluntarily without good cause attributable to the work or the employer. In the second decision, the Commission found that Ms. Nicholson was ineligible for unemployment benefits because she was not fully available for work. On appeal, Ms. Nicholson requests that this court "reverse and remand with directions to the trial court" to enter judgment in her favor awarding her unemployment benefits. This court dismisses Ms. Nicholson's appeal for failure to comply with Rule 84.04 and failure to include any legal authority in support of her claim.

## Factual and Procedural Background

Ms. Nicholson was employed as an insurance clerk by Transamerica Occidental Life Insurance Company for approximately one and a half years.[1] Ms. Nicholson's scheduled work hours were from 8:00 A.M. to 4:45 P.M., Monday through Friday. In early September 2002, one of Ms. Nicholson's children started school. Because of her child's new schedule and transportation needs, Ms. Nicholson was able to work from only 8:30 A.M. to 4:00 P.M., Monday through Friday. Ms. Nicholson requested a change in her work hours to accommodate her child care responsibilities, but Transamerica denied her request. During the week of September 3, 2002, Ms. Nicholson arrived late for work each morning. One morning, she arrived as much as two and a half hours late. She also left early each afternoon.

Transamerica made the decision to terminate Ms. Nicholson on Monday, September 9, 2002, for her continued violations of the company's attendance policy.[2] Erin Warner, a human resources consultant with Transamerica, testified that on September 9, 2002, Ms. Nicholson left work early without informing her manager and, consequently, the company was unable to inform her of its decision on that day. According to Mr. Warner, the company met with Ms. Nicholson the following morning and informed her that she was being terminated because of her failure to follow the company's attendance policy.[3]

Thereafter, Ms. Nicholson filed an application for unemployment benefits. On September 24, 2002, a deputy with the Division of Employment Security took two statements from Ms. Nicholson. In one statement, Ms. Nicholson stated that she could not complete forty hours of work because her son started school and she needed to pick him up. Thus, she could work from only 9:00 to 3:30 until her son's school began extended care. In her second statement, she stated that she could work only part-time from 9:00 to 3:30 because she did not have extended day care.

On October 21, 2002, a deputy with the Division issued two determinations. In the first determination, the deputy found that, under section 288.050,[4] RSMo 2000,[5]

1. Before her permanent employment with Transamerica, Ms. Nicholson worked for the company through a temporary agency.

2. Before September 10, 2002, Ms. Nicholson received four separate attendance warnings from Transamerica.

3. One of the documents offered into evidence by Transamerica indicated that Ms. Nicholson was terminated on September 9, 2002. In her statement to a Division deputy, Ms. Nicholson stated that she was terminated on September 10, 2002. She testified during the appeals hearing on December 13, 2002, however, that she was terminated on September 9, 2002. The decision of the appeals tribunal found that Ms. Nicholson last worked for Transamerica on September 10, 2002.

4. Section 288.050.1 provides, in pertinent part:

Notwithstanding the other provisions of this law, a claimant shall be disqualified for waiting week credit or benefits until after

Ms. Nicholson was disqualified from benefits from September 9, 2002, because she left work voluntarily without good cause attributable to the work or the employer. In the second determination, the deputy found that, under section 288.040,[6] Ms. Nicholson was ineligible for benefits from September 8, 2002, because her desire to work no more than thirty hours per week made her unavailable for work.

Ms. Nicholson timely appealed both of the deputy's determinations to the appeals tribunal. An appeals referee conducted, by way of a telephone conference, a separate hearing on each of the deputy's determinations. On December 18, 2002, in two separate decisions, the appeals tribunal affirmed the deputy's determinations. Ms. Nicholson appealed both decisions to the Commission. On April 1, 2003, the Commission affirmed and adopted both decisions of the appeals tribunal. This appeal followed.

### Briefing Deficiencies Preclude Review

On appeal, Ms. Nicholson requests this court to "reverse and remand with directions to the trial court to enter summary judgment in favor of [Ms. Nicholson] on the issue of being compensated Unemployment benefits for all the weeks she claimed." Before this court can address the merits of Ms. Nicholson's point, however, this court must address the Division's motion to strike Ms. Nicholson's brief and dismiss the appeal.

In some cases, a brief may be so deficient that it precludes appellate review. *Jenkins v. Manpower on Site at Proctor & Gamble*, 106 S.W.3d 620, 623 (Mo.App. 2003). "Appellate courts require compliance with Rule 84 to ensure they do not become advocates by speculating on facts and arguments that have not been asserted." *Quarles v. Richman Gordman Stores, Inc.*, 68 S.W.3d 452, 454 (Mo.App. 2001). Ms. Nicholson is not represented by counsel in this case. Nevertheless, a *pro se* litigant "is held to the same procedural rules as attorneys and will not receive preferential treatment regarding compliance, despite this [c]ourt's sensitivity to the problems faced by such litigants." *Id.*

Ms. Nicholson originally filed her brief on August 22, 2003. On August 27, 2003, this court struck her brief because it lacked a table of cases, in violation of Rule 84.04(a)(1); lacked a statement of facts with page references to the record on appeal, in violation of Rule 84.04(c) and 84.04(i); lacked a point relied on in compli-

the claimant has earned wages for work insured pursuant to the unemployment compensation laws of any state equal to ten times the claimant's weekly benefit amount if the deputy finds:

(1) That the claimant has left work voluntarily without good cause attributable to such work or to the claimant's employer[.]

5. All statutory references are to the Revised Statutes of Missouri 2000.

6. Section 288.040.1 provides, in pertinent part:

A claimant who is unemployed and has been determined to be an insured worker shall be eligible for benefits for any week only if the deputy finds that:

. . .

(2) The claimant is able to work and is available for work. No person shall be deemed available for work unless such person has been and is actively and earnestly seeking work. Upon the filing of an initial or renewed claim, and prior to the filing of each weekly claim thereafter, the deputy shall notify each claimant of the number of work search contacts required to constitute an active search for work. No person shall be considered not available for work, pursuant to this subdivision, solely because he or she is a substitute teacher or is on jury duty.

ance with Rule 84.04(d); and lacked a concise statement of the applicable standard of review for each claim of error, in violation of Rule 84.04(e). This court ordered Ms. Nicholson to file an amended brief, in compliance with Rule 84.04, by September 11, 2003. Thereafter, this court granted Ms. Nicholson two extensions of time within which to file her amended brief.

■ Despite these extensions of time, the amended brief Ms. Nicholson filed fails to comply with several requirements of Rule 84.04. Looking first at her point relied on, this court notes that when a party appeals from an administrative decision, the point must identify the administrative ruling the appellant is challenging, "state concisely the legal reasons for the appellant's claim of reversible error," and explain why the legal reasons support the claim of reversible error. Rule 84.04(d)(2). The rule further instructs:

> The point shall be in substantially the following form: "The [*name of agency*] erred in [*identify the challenged ruling or action*], because [*state the legal reasons for the claim of reversible error, including the reference to the applicable statute authorizing review*], in that [*explain why, in the context of the case, the legal reasons support the claim of reversible error*]."

Rule 84.04(d)(2). The intent of Rule 84.04(d) is to give notice to the opposing party of the exact claim being made and to what it specifically must respond, and to advise this court of the questions presented for review. *Finnical v. Finnical*, 81 S.W.3d 554, 559 (Mo.App.2002). "Deficient points relied on preserve nothing for this court to review and are grounds for dismissal on appeal." *Quarles*, 68 S.W.3d at 454.

Ms. Nicholson's point relied on states:

> Case 02–23985 R–A, he [sic] court erred in ruling that the appellant quit

her employment, because there is no evidence that claimant abandoned or quit her employment.

Evidence supporting the termination essentially was testimony that claimant often left work early or arrived late due to needs related to her son and that she was warned about those short comings prior to her discharge.

Failure to follow an employer's instructions or reporting a few minutes late or leaving a few minutes early cannot be equated with "quitting". A clear distinction between actions which amount to "quitting" and actions which can be categorized as misconduct does exist. To quit one must at least take some action that equals putting one's self out of the workforce.

At no time did claimant ever perform any such acts. At most, what she can be found to have done is to fail to carry out her employer's instruction as to when she was to perform her duties. Not doing exactly as told may be misconduct, but is definitely not a quit.

Cases [sic] 02–23987 R–A, the court erred in ruling that the claimant was unavailable for work, because the claimant did not have her lawyer present and was not given a fair chance to answer the deputies [sic] question. Her son was often sick but she didn't know why until a doctor diagnosed the baby with asthma. After being diagnosed with asthma the baby was sent home with medicine so the child could be treated at home or at daycare so the mother didn't have to rush baby to the hospital or stay home with baby. Arrangement was also set up for her 7 year old son to be carried from school to daycare.

■ Ms. Nicholson's point relied on fails to follow the format set forth in Rule 84.04(d)(2). The point does comply with

Rule 84.04(d)(2)(A), to some extent, by identifying the administrative rulings she is challenging. The point states that "the court erred in ruling that [she] quit her employment," and "the court erred in ruling that [she] was unavailable for work." The point does not, however, "concisely" state the legal reasons for the claimed errors. Rule 84.04(d)(2)(B). Nor does it "explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error." Rule 84.04(d)(2)(C). Rather, Ms. Nicholson's point, which is five paragraphs long, simply outlines what the evidence demonstrated; argues, without legal reasons to support the claim, that a distinction exists between "quit" and "misconduct"; and claims that she was not given a fair chance to answer the deputy's questions because she did not have a lawyer present. Ms. Nicholson's point relied on fails to advise her opposing party and this court of the issues presented for review.

■■■ To compound this problem, Ms. Nicholson's brief essentially has no argument section. Rule 84.04(e) requires that a brief contain an argument section that discusses the point on appeal. "An argument should show how the principles of law and the facts of the case interact." *Carroll v. AAA Bail Bonds,* 6 S.W.3d 215, 218 (Mo.App.1999). Where "the appellant neither cites relevant authority nor explains why such authority is not available, the appellate court is justified in considering the points abandoned and dismiss[ing] the appeal." *In re Marriage of Spears,* 995 S.W.2d 500, 503 (Mo.App.1999). *See also Hardin v. State,* 51 S.W.3d 129, 131 (Mo.App.2001) (dismissing *pro se* litigant's appeal because point relied on did not comply with Rule 84.04(d) and argument did not include applicable standard of review).

Ms. Nicholson's entire argument, with the exception of a reproduction of her point relied on, consists of two conclusory paragraphs:

[Reproduction of part of point relied on]

Because the attached document clearly states that I was terminated from Transamerica, the court erred in entering summary judgment in favor of the defendant. Because the attached document provides proof of the appellant being terminated, this court should reverse and remand with directions to the trial court to enter summary judgment in favor of the appellant on the issue of being compensated Unemployment benefits.

[reproduction of remainder of point relied on]

Because claimant has the chance to further explain her situation, the court should reverse and remand with directions to the trial court to enter summary judgment in favor of the appellant on the issue of being compensated Unemployment benefits for all the weeks she claimed.

■■■ Ms. Nicholson advances no argument demonstrating how the facts of her case interact with the law supporting her claim of error. Indeed, Ms. Nicholson's argument does not even discuss the law. "It is an appellant's obligation to cite appropriate and available precedent if she expects to prevail." *Spears,* 995 S.W.2d at 503. Ms. Nicholson neither cites relevant authority nor explains why such authority is unavailable. Moreover, Ms. Nicholson's argument does not include a "concise statement of the applicable standard of review" as required by Rule 84.04(e).

In addition to the deficiencies in her point relied on and argument, this court also notes that Ms. Nicholson's jurisdictional statement does not comply with Rule 84.04(b), in that it contains no facts

**308**

demonstrating the applicability of the particular constitutional provision whereon Ms. Nicholson seeks to invoke this court's jurisdiction. Her statement of facts fails to comply with Rule 84.04(i), because it does not cite to specific page references in the legal file or transcript. Her brief also fails to include a conclusion stating the precise relief sought, as required by Rule 84.04(a)(6). Finally, the appendix to her brief does not include a copy of the decision in question, and the text of statutes, ordinances, court rules, or agency rules relevant to the claims on appeal, as required by Rule 84.04(h)(1) and (2).

■■■ "Where possible, ... [this court's] preference is to dispose of a case on the merits rather than to dismiss an appeal for deficiencies in the brief." *Podlesak v. Wesley*, 849 S.W.2d 728, 731 (Mo.App. 1993). In this case, however, the deficiencies in Ms. Nicholson's brief are so substantial that, to conduct any meaningful review, this court "would be forced to speculate not only as to the claims being raised, but as to the facts and arguments being relied on in support of the same." *Lemay v. Hardin*, 108 S.W.3d 705, 709 (Mo.App.2003). Therefore, this court must decline review. *Id.* The Division's motion to strike Ms. Nicholson's brief and dismiss the appeal is granted.

The appeal is dismissed.

All concur.