**Regenia CUBIT, Appellant,**

v.

**ACCENT MARKETING SERVICES, LLC., Defendant,**

**Division Of Employment Security, Respondent.**

**No. WD 66800.**

Missouri Court of Appeals, Western District.

March 6, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 29, 2007.

Regenia Cubit, Kansas City, pro se.

Larry Raymond Ruhmann, Jefferson City, for Respondent.

RONALD R. HOLLIGER, Judge.

Regenia Cubit ("Cubit") appeals the denial of unemployment benefits on the grounds that she was discharged for misconduct connected with her work. See

Section 288.050.2, RSMo 2000.[1] Cubit's employer, Accent Marketing Services, LLC ("Accent"), argued before the Division of Employment Security ("the Division") that Cubit's violation of Accent's attendance policy was misconduct that disqualified her from receiving unemployment benefits. The Division agreed, as did the Appeals Tribunal. The Labor and Industrial Relations Commission ("the Commission") affirmed and adopted the decision of the Appeals Tribunal. Although Accent was justified in firing Cubit, her absenteeism did not meet the legal test of misconduct connected with work that justifies a denial of benefits. We therefore reverse.

## Factual and Procedural Background

Cubit worked full time as a customer service representative in Accent's call center. Accent had an attendance policy, known to Cubit, that subjected employees to discharge whenever the employee accrued five "occurrences" in a six-month period.[2] During her employment, Cubit ran afoul of this policy, at one point accruing as many as 7.5 occurrences. During a telephone hearing before the Appeals Tribunal, Cubit explained that she had difficulty arriving on time because she had to drop off her twelve-year old son before work each morning. This difficulty was exacerbated when summer school started, and his drop-off time changed from 7:30 to 8:00 in the morning. On June 14, Cubit requested that the starting time for her shift be changed from 8:00 to 8:30, and Accent granted this accommodation. Following that accommodation, however, Cubit was late, by as much as ten minutes, three more times. On July 15, 2005, Cubit arrived seven minutes late for her 8:30 shift and was discharged for violating the

attendance policy. In the six months preceding her termination, Cubit had accrued 7.25 occurrences. At her hearing, Cubit explained that her additional tardies resulted from the closure of a bridge on her route to work. During that bridge closing, crossing the river involved taking a detour.

Cubit filed a timely claim for unemployment benefits. The Division's claims deputy determined that Cubit was disqualified from waiting week credit and benefits. Cubit filed an appeal with the Appeals Tribunal, which conducted a telephone hearing and entered a decision affirming the Division. That decision was, in turn, affirmed and adopted by the Commission, and this appeal follows.

## Standard of Review

The Missouri Employment Security Law is to be "liberally construed to accomplish its purpose to promote employment security ... by providing for the payment of compensation to individuals in respect to their unemployment." Section 288.020.2. While an unemployment claimant generally bears the burden of establishing eligibility for benefits, where the employer asserts that the claimant was discharged for misconduct connected to work, the burden on that point shifts to the employer. *McClelland v. Hogan Pers., LLC,* 116 S.W.3d 660, 664 (Mo.App. W.D.2003). Whether an employee's actions constitute misconduct associated with work is not a question of fact but a question of law, which this court reviews independently with no deference to the Commission. *Id.*

## Discussion

On appeal, Cubit has filed a brief that is not in substantial compliance with

1. All subsequent statutory references are to RSMo 2000, except where otherwise noted.

2. Under the policy, unexcused absences are counted as an "occurrence," and tardies are counted as fractional occurrences.

Rule 84.04. The Commission contends that Cubit's brief should be stricken and the case dismissed on that basis. Although Cubit is appearing *pro se,* she is still held to the same standards as a party represented by counsel and, therefore, must comply with the provisions of Rule 84.04. *Woodson v. City of Independence,* 124 S.W.3d 20, 24 (Mo.App. W.D.2004). "[C]ompliance with Rule 84.04 ensures that the appellate court does not act as an advocate for the party by speculating on facts and arguments that were not asserted." *Id.* In this case, however, we can easily discern from Cubit's brief the facts and arguments necessary to review the claim asserted.[3]

The issue to be decided in this appeal is whether Employer carried its burden of establishing that Cubit was discharged for misconduct connected with her work. In her brief before this court, Cubit asserts error "in sustaining the Appellant fault for Being [sic] dismissed from her work of employment, because the Respondent failed to show at any time, that the Appellant was discharged for misconduct." Her point relied on states that "EMPLOYER BEARS THE BURDEN OF INTRODUCING COMPETENT AND SUBSTANTIAL EVDENCE [sic] TO ESTABLISH MISCONDUCT." This is an accurate statement of Missouri law, which Cubit supports by way of citation to *Sokol v. Labor and Industrial Relations Commission,* 946 S.W.2d 20 (Mo. App. W.D.1997), in which this court noted that a fired employee is "entitled to unemployment compensation benefits unless

the employer met the burden of showing that the employee was dismissed for misconduct connected with his work." *Id.* at 26. Cubit's point further asserts that "THERE WAS NEVER ANY EVIDENCE OF MISCONDUCT INTRODUCED AT THE HEARING OF THE APPELLANT WORK PERFORMANCE." If this statement is true, Employer failed to meet its burden of proof before the Commission and Cubit is entitled to the benefits she now requests. *See id.*

■ Thus, while Cubit's brief is inartfully drafted, it does present an assertion of error below, a legal argument supporting that assertion of error, and legal authority in support of that legal argument. Under such circumstances, appellate courts have discretion to review an appeal on the merits even if the brief fails to comply with Rule 84.04. *Id.* We therefore choose to review Cubit's claims on the merits. *See Rodriguez v. Osco Drug,* 166 S.W.3d 138, 140 (Mo.App. W.D.2005).

The Commission also points out that Cubit has filed, as an attachment to her brief, a purported "Exhibit One," consisting of a newspaper article discussing the reopening of the Paseo Bridge across the Missouri River. The Commission asserts that since that article was not before the Division or Commission, it is not properly before this court. Since the article is irrelevant to any question before this court, it is neither discussed nor relied upon in this opinion.[4]

---

**3.** We further note that Employer appears also to have correctly identified the dispositive issue on appeal and argues in its brief that Cubit's actions constituted misconduct.

**4.** The article is presumably offered as evidence that the Paseo Bridge was closed at the time Cubit was discharged. There was com-

petent evidence before the Division and Commission that a bridge closure impeded Cubit's morning commute, and, as discussed *infra,* the Commission so found in the decision currently on appeal. The newspaper article in question, therefore, adds nothing to this court's review.

Cubit disputes neither the existence nor her knowledge of Accent's attendance policy; nor does she dispute Accent's right to terminate her employment for violation of that policy. The sole question before this court is, therefore, whether the evidence before the Division and Commission was sufficient to support the legal conclusion that Cubit was discharged for "misconduct connected with the claimant's work" as that phrase is used in section 288.050.2.

■ Persistent absenteeism can constitute grounds for a finding of misconduct. Indeed, the version of section 288.050.3 in effect at the time of Cubit's discharge declared that:

Absenteeism or tardiness may constitute misconduct regardless of whether the last incident alone constitutes misconduct. In determining whether the degree of absenteeism or tardiness constitutes a pattern for which misconduct may be found, the division shall consider whether the discharge was the result of a violation of the employer's attendance policy, provided the employee had received knowledge of such policy prior to the occurrence of any absence or tardy upon which the discharge is based.[5]

■ An employer contending that a discharge is justified by an employee's work-related misconduct bears the burden of establishing that misconduct. *McClelland*, 116 S.W.3d at 664. In the present case, Accent offered Cubit's attendance records and its own attendance policy as evidence. That evidence alone is insuffi-

cient under the statute to show disqualifying misconduct.[6] Cubit testified that she was late to work because she had to drop off her son and because a traffic detour extended her morning commute. Indeed, the judgment of the Commission accepted that testimony as true, specifically finding that, "[t]he claimant was repeatedly late due to ongoing bridge repairs on her route. She was cutting the time too close what with dropping off her son at summer school."

■ These findings are insufficient, as a matter of law, to support the Commission's conclusion that Cubit's actions "constitute[d] willful violation or disregard of employer rules and interests." Because the factors leading to Cubit's tardiness were entirely outside of her own control, any violation or disregard of her employer's rules and interests cannot fairly be classified as "willful." *See Dameron v. Drury Inns, Inc.*, 190 S.W.3d 508, 511 (Mo.App. E.D.2006) (noting that where "absences are due to illness or family emergency, a claimant has not *willfully* violated an employer's rule"). "Misconduct" in this context is now statutorily defined as:

an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has a right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or

---

5. This language is from the 2004 version of section 288.050.3, which was in effect during the relevant timeframe. That subsection has since been amended, and now reads:

Absenteeism or tardiness may constitute a rebuttable presumption of misconduct, regardless of whether the last incident alone constitutes misconduct, if the discharge was the result of a violation of the employer's attendance policy, provided the employee

had received knowledge of such policy prior to the occurrence of any absence or tardy upon which the discharge is based. Section 288.050.3, RSMo 2006 (effective October 1, 2006).

6. Neither Accent nor the Division relies upon section 288.050.3. Indeed, that subsection is not even cited in the briefs before this court.

show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer[.]

Section 288.030.1(24). Taken as a whole, the statutory scheme in effect at the time of Cubit's discharge seems to contemplate the possibility that, at some point, a pattern of persistent absenteeism may justify a finding of misconduct under section 288.050.2. Nonetheless:

> the determination of whether excessive absences are statutory misconduct is a separate consideration from whether such absences violate the absenteeism policy of [the] employer. There is a vast distinction between the violation of an employer's work rule, which would justify the discharge of the employee, and a willful, wanton, or deliberate violation of such rule, which would warrant a determination of misconduct disqualifying the claimant for unemployment-compensation benefits.

*Dameron,* 190 S.W.3d at 512 (internal citations omitted).

▮ In this appeal, no attempt is made to argue that Accent established such a pattern of absenteeism. There was no evidence that Cubit's violation of the attendance policy was a willful, wanton or deliberate violation of her employer's rules and, therefore, was misconduct under section 288.050.3. No argument is made that her tardiness constituted a pattern of absenteeism.

## Conclusion

Because Accent failed to meet its burden of proving that Cubit was discharged for misconduct connected with work, the Commission's judgment is reversed and the case is remanded for the entry of an appropriate award.

HAROLD L. LOWENSTEIN, Judge, concurs.

PATRICIA A. BRECKENRIDGE, Presiding Judge, dissents in separate opinion.

PATRICIA BRECKENRIDGE, Judge, dissenting.

I respectfully dissent. While the majority recognizes that Regenia Cubit's brief does not comply with the requirements of Rule 84.04, it finds that it "can easily discern the facts and arguments necessary to review the claim stated." While I agree that this court prefers to decide cases on the merits, rather than to dismiss for a defective brief, *Nicholson v. Transamerica Occidental Life Ins. Co.,* 144 S.W.3d 302, 308 (Mo.App. W.D.2004), Ms. Cubit's brief is so defective that the court is acting as an advocate for her by proceeding with her claim on appeal. Her point relied on states:

> EMPLOYER BEARS THE BURDEN OF INTRODUCING COMPETENT AND SUBSTANTIAL EVIDENCE TO ESTABLISH MISCONDUCT.
> THE APPELLANT (EXHIBIT ONE) DOCUMENT STATING THAT THE BRIDGE WAS BEING REPAIRED. THERE WAS NEVER ANY EVIDENCE OF MISCONDUCT INTRODUCED AT THE HEARING OF THE APPELLANT WORK PERFORMANCE.

The argument section of her brief states:

> The Trial Court erred in up holding the Employer Judgment of with Holding the Appellant unemployment insurance benefits, when no Paper work was presented at the hearing for misconduct.
>
> The Appellant informed her employer that she had a problem, And showed good faith to get to work on time.

Once the Appellant arrived at work she performed her duties In a professional manner, and never received an write up on paper about Her job performance. The Employer presented no evidence to suggest that the Appellant was not making a good faith effort to get to work Or that her tardiness was intentional.

Based on Missouri Employment Security Law, no violation of the Employer's rules took place, and the employee's duties and obligations To the employer were met by the Appellant.

She then cites three cases, but does not state the principles for which the cases are cited or apply any law from those cases to the facts of her case. While her argument section does articulate a claim that she made a good faith effort to get to work and her tardiness was not intentional, merely stating that concept is not sufficient to justify a reversal of the Commission's decision denying her unemployment benefits. Rather, " '[a]n argument should show how the principles of law and the facts of the case interact.' " *Nicholson,* 144 S.W.3d at 307 (citation omitted). Accordingly, I would find that her brief is so deficient that this court can only consider the merits of her claim of error by acting as her advocate, which the court should not do. *Id.* at 305.