**Monikki WILLIAMS, Appellant,**

v.

**ENTERPRISE RENT–A–CAR SHARED SERVICES, LLC and Division of Employment Security, Respondents.**

**No. ED 92984.**

Missouri Court of Appeals, Eastern District, Division Three.

Nov. 10, 2009.

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

Monikki Williams, Saint Louis, MO, pro se.

Larry R. Ruhmann, Jefferson City, MO, for Respondents.

## OPINION

GLENN A. NORTON, Presiding Judge.

Monikki Williams ("Claimant") appeals the decision of the Labor and Industrial Relations Commission denying her unemployment benefits on the ground that she was discharged for misconduct connected with her work. We reverse and remand for the entry of an appropriate award.

## I. BACKGROUND

Claimant was employed by Enterprise Rent-A-Car Shared Services, LLC ("Employer") from April 3, 2006, until December 19, 2008, when she was terminated for violating Employer's attendance policy.

Employer has a point-system attendance policy. One day's absence results in one point on an employee's record; tardiness results in one-half point. Upon accumulating 9.5 points, an employee receives a verbal warning; ten points results in a written warning. If an employee reaches eleven points, she is automatically terminated.[1] Points received for absences and tardiness "roll off" an employee's record after twelve months. However, the policy also provides that if an employee receives two written warnings in a 12-month period, she is automatically terminated.

Employer's policy allows for a fifteen-minute grace period with respect to an employee's start time. This grace period allowed Claimant, a single parent, some flexibility in getting her children to school before reporting to work at her scheduled start time of 7:30 a.m. Under Employer's policy, Claimant was allowed to arrive as late as 7:45 a.m. without receiving a half-point for being tardy.

Employer's records indicate Claimant accumulated two points for two absences, one for a funeral on September 5, 2008, and one for a sick day on December 2, 2008. Claimant accumulated a total of eight additional points as a result of sixteen tardies between January 15, 2008, and December 19, 2008.[2] On December 19, 2008, Claimant was late to work[3] and was assessed one-half point, which put her at ten points and resulted in her second written warning within a twelve month period.[4] Per Employer's attendance policy, this second written warning resulted in Claimant's automatic termination.

Claimant's application for unemployment benefits was denied on the ground that she was terminated for misconduct connected with her work. Following a hearing, the Appeals Tribunal affirmed this decision, finding Claimant's frequent tardiness "indicate[s] a serious disregard

---

1. Employer's policy was revised in September 2008. Under the old policy, an employee received a written warning upon the accumulation of 4.5 points, and was terminated upon the accumulation of five points.

2. Employer recorded Claimant as tardy on the following dates: 1-15-08, 4-4-08, 5-13-08, 8-15-08, 9-3-08, 9-9-08, 9-10-08, 9-11-08, 10-9-08, 10-21-08, 10-27-08, 11-25-08, 12-5-08, 12-10-08, 12-17-08, and 12-19-08.

3. Employer's records show that on December 19, 2008 (Claimant's termination date), Claimant arrived at 7:46 (one minute past the allowed grace period).

4. Employer testified that Claimant received a written warning for accruing 4.5 points on January 22, 2008. Claimant disputes this. It is interesting to note that Employer's testimony did not give January 22, 2008, as a date that Claimant was late or tardy, so it is unclear what triggered the accumulation of 4.5 points on that date. In addition, the old attendance policy was in effect on April 4, 2008, when Employer's records indicated Claimant was tardy. Claimant argues that if she in fact received a written warning on January 22, 2008, for reaching 4.5 points, on April 4, 2008, she would have reached her fifth point and been terminated under the old policy.

by [C]laimant of [E]mployer's interests" and therefore constituted statutory misconduct under section 288.030.1(23) RSMo Supp.2007.[5] Claimant appealed to the Commission. The Commission adopted the decision of the Appeals Tribunal. Commissioner Hickey dissented from the decision on the grounds that Employer failed to establish the requisite intent necessary to support a finding of misconduct. Claimant appealed.

## II. DISCUSSION

In her sole point on appeal, Claimant argues the Commission erred in affirming the decision of the Appeals Tribunal disqualifying her from receiving unemployment benefits on the ground that her actions in violating Employer's attendance policy constituted misconduct. We agree.

### A. Standard of Review

On appeal from a decision in an unemployment benefits proceeding, this Court may modify, reverse, remand for rehearing, or set aside the award upon finding: (1) that the Commission acted without or in excess of its powers; (2) that the award was procured by fraud; (3) that the facts found by the Commission do not support the award; or (4) that there was not sufficient competent evidence in the record to warrant the making of the award. Section 288.210 RSMo 2000.

### B. The Commission Erred in Disqualifying Claimant from Receiving Benefits

#### 1. Relevant Law

Section 288.050.2 provides that a claimant shall be disqualified from receiving unemployment benefits upon a finding that she was discharged for misconduct connected with her work. Misconduct is defined by statute as:

[A]n act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.

Section 288.030.1(23). Each of the criteria for finding misconduct has an element of culpability or intent. *Murphy v. Aaron's Automotive Products*, 232 S.W.3d 616, 621 (Mo.App. S.D.2007). To willfully disregard an employer's interests, an employee has to be aware of and knowingly or consciously violate an employer's rule. *Id.* Willful misconduct is established by a showing that the claimant's actions amounted to a conscious disregard for the interests of the employer or constituted behavior contrary to that which an employer has a right to expect. *Dixon v. Stoam Industries, Inc.*, 216 S.W.3d 688, 693 (Mo.App. S.D.2007).

While the claimant bears the burden of proving a right to benefits, *O'Dell v. Division of Employment Security*, 376 S.W.2d 137, 142 (Mo.1964), where misconduct is alleged, the burden of proof on this issue is on the employer, *Kansas City Club v. Labor and Industrial Relations Commission*, 840 S.W.2d 273, 275 (Mo.App. W.D.1992).

The determination of whether an employee is discharged for misconduct connected with work is a question of law that we review de novo. *RPCS, Inc. v. Waters*, 190 S.W.3d 580, 586 (Mo.App. S.D. 2006).

**5.** All statutory references are to RSMo Supp. 2007, unless otherwise indicated.

## 2. The Circumstances Surrounding Claimant's Violation of Employer's Attendance Policy did not Support a Finding that Claimant's Actions Constituted Misconduct

The Commission found Claimant's actions in knowingly violating Employer's attendance policy constituted misconduct connected with her work, and therefore Claimant was disqualified from receiving unemployment benefits. We find the ruling of the Commission was not supported by sufficient evidence and misapplied the law.

Employer disputed Claimant's claim for unemployment benefits, citing the reason for termination as "excessive absenteeism and tardiness." Employer provided documentation of the days Claimant was absent or tardy. Employer's records indicate between January 15, 2008, and December 19, 2008, Claimant was absent two days and tardy a total of sixteen days. Employer's documentation states Claimant had knowledge of and understood the attendance policy. According to Employer's records, on December 17, 2008, after arriving to work late, Claimant received a verbal warning explaining that she was a half point away from receiving a second written warning, which would result in her termination. Employer claims Claimant understood and acknowledged the severity of the situation.

Nevertheless, Claimant was late again on December 19, 2008. Employer's records show Claimant clocked in at 7:46 a.m., which was one minute past the fifteen minute grace period, and was assessed one-half point for tardiness. Thus, on December 19, 2008, Claimant received a written warning for accumulating ten points. Because this was her second written warning within a twelve month period, Claimant was automatically terminated.

The Division argues [6] Employer presented substantial evidence that Claimant was discharged for misconduct connected with work simply because it demonstrated that her frequent tardiness violated its rules relating to attendance. In so arguing, the Division relies on section 288.050.3, which provides

> Absenteeism or tardiness may constitute a rebuttable presumption of misconduct, regardless of whether the last incident alone constitutes misconduct, if the discharge was the result of a violation of the employer's attendance policy, provided the employee had received knowledge of such policy prior to the occurrence of any absence or tardy upon which the discharge is based.

The Division's reliance is misplaced, however, because the Commission, as the finder of fact, did not base its finding of misconduct on this statutory provision. Instead, the Commission relied on the section 288.030.1(23), which defines misconduct as

> [A]n act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.

More specifically, the Commission found "[C]laimant's significant record of tardies with [E]mployer definitely does indicate a

---

**6.** The Division of Employment Security filed a Respondent's brief. No brief was filed by Employer.

serious disregard by the Claimant of the [E]mployer's interest." Thus, in conducting our de novo review of whether Claimant's actions constituted misconduct, we base our decision upon section 288.030.1(23) and are guided by the case law decided thereunder.

While the violation of an employer's reasonable work rule can constitute misconduct, *Moore v. Swisher Mower & Machine Co., Inc.,* 49 S.W.3d 731, 740 (Mo.App. E.D.2001), there is a "vast distinction" between conduct that would justify an employer in terminating an employee and conduct that is misconduct for purposes of denying unemployment benefits, *Pemiscot County Memorial Hospital v. Missouri Labor and Industrial Relations Commission,* 897 S.W.2d 222, 226 (Mo. App. S.D.1995). Thus, "the determination of whether excessive absences are statutory misconduct is a separate consideration from whether such absences violate the absenteeism policy of [the] employer." *Dameron v. Drury Inns, Inc.,* 190 S.W.3d 508, 512 (Mo.App. E.D.2006); *see also Tutwiler v. Fin–Clair Corporation,* 995 S.W.2d 497, 499 (Mo.App. E.D.1999). Therefore, the fact that Employer was justified in terminating Claimant under its written attendance policy is irrelevant to our determination of whether she was terminated for misconduct.

In this case, we find Claimant's tardiness due to issues related to her children did not amount to a willful violation of Employer's attendance policy. In so finding, we are guided by *Cubit v. Accent Marketing Services, LLC,* 222 S.W.3d 277 (Mo.App. W.D.2007). Cubit, the claimant, was often late to work because she had to drop off her twelve-year-old son at school before the start of her shift. 222 S.W.3d at 279. Even after the employer allowed Cubit to change the starting time of her shift from 8:00 to 8:30 her tardiness continued. *Id.* Cubit was terminated for violating the employer's attendance policy. *Id.* In denying unemployment benefits, the Commission found Cubit was repeatedly late because "[s]he was cutting the time too close ... with dropping off her son at summer school." *Id.* at 281. On appeal, the Court held the Commission's findings were "insufficient, as a matter of law, to support [its] conclusion that Cubit's actions 'constituted willful violation or disregard of employer rules and interests.' " *Id.*

The circumstances in this case are similar to those in *Cubit.* Claimant testified she was frequently tardy because she is a single parent and has to get her children to school before getting herself to work. Employer did not dispute this testimony and the Commission accepted Claimant's testimony as true. The Commission's finding that Claimant was repeatedly late because she needed to get her children to school before reporting to work was insufficient, as a matter of law, to support its conclusion that Claimant's actions constituted misconduct. Point granted.

### III. CONCLUSION

The Commission erred in finding Claimant's actions amounted to misconduct which disqualified her from receiving unemployment benefits. Accordingly, we reverse and remand for the entry of an appropriate award.

MARY K. HOFF and LAWRENCE E. MOONEY, JJ., concur.