Nicholas J. KLEIMANN,
Employee/Appellant,

v.

ST. LOUIS COUNTY CAB COMPANY,
INC., Employer/Respondent,

and

Division of Employment Security,
Respondent/Respondent.

No. ED 95404.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 14, 2011.

John J. Ammann, Scott T. Reinagel, St. Louis, MO, for Employee/Appellant.

St. Louis County Cab Company, Acting pro se.

Larry R. Ruhmann, Jefferson City, MO, for Respondent/Respondent.

SHERRI B. SULLIVAN, P.J.

*Introduction*

Nicholas J. Kleimann (Employee) appeals from the decision of the Labor and Industrial Relations Commission (the Commission) denying him unemployment benefits. We reverse and remand.

*Factual and Procedural Background*

Employee worked for the St. Louis County Cab Company, Inc. (Employer) as a passenger service agent from September 26, 2007 until February 13, 2010, when he was discharged for insubordination.

Effective in the beginning of the year 2010, Employer had established an attend-

ance point system whereby employees were assessed a point for every instance in which an employee arrived late to work. A single point covered a period of up to four hours of tardiness.

On Tuesday, February 9, 2010, Employee was due to arrive at work by 7:00 a.m. Employee called his immediate supervisor, Joe Maldonado (Maldonado) to inform him that he would be late due to heavy snowfall. Employee also left a message for another supervisor, Passenger Service Call Center Manager Matt Blind (Blind).

Employee knew that he would receive a point for being late. Employee allowed the maximum time allotted under that point, four hours, to pass before he went to work, to allow as much snow removal as possible before he traveled the roads. Accordingly, Employee arrived at work at 11:00 a.m. Appellant was assessed a point for his tardiness on Tuesday, February 9, 2010.

On Friday, February 12, 2010, at 2:58 p.m., Blind called Employee and asked to speak with him after his shift ended at 3:00 p.m. Employee clocked out at 3:00 p.m. and proceeded to Blind's office where Blind and Employee discussed his tardiness on Tuesday for a period of five to ten minutes, during which time Employee acknowledged his tardiness and agreed to rectify his behavior in the future. Employee then told Blind that he had to leave the meeting because he had to be somewhere at 3:30 p.m. Blind instructed Employee to remain seated, but Employee insisted that he had to leave. Blind told him to remain seated a total of three times. Employee said he had to go and left.

The next day, Saturday, February 13, 2010, Blind terminated Employee's employment with Employer for insubordination, *i.e.*, walking out on the February 12 meeting and refusing to participate in Blind's tardiness coaching and counseling.

After his termination, Employee filed a claim for unemployment benefits, which Employer protested. The Division of Employment Security (the Division) denied benefits, determining that Employee was disqualified from receiving benefits because he was discharged for misconduct connected with work. Employee appealed this determination to the Appeals Tribunal, which held a hearing. At the hearing, Employee testified that he left because he had a prior scheduled appointment, was no longer clocked in, believed that he was free to leave, and did not believe he was being paid at the time. Blind maintained that Employee did not tell him specifically why he had to leave, that if Employee had stayed for the meeting he would have been paid for the time that he was at the meeting, and it was not uncommon for Employee to be asked to work additional time outside of his normally scheduled hours.

After the hearing, the Appeals Tribunal affirmed the Division's denial of benefits, based on a finding that Employee's refusal to remain for the meeting and to not tell Blind why he had to leave the meeting was misconduct connected with work, was "unreasonable and [was] a disregard of the standard of behavior which the employer ha[s] a right to expect of him and misconduct as contemplated by the statutory definition."

Employee then appealed to the Commission, which affirmed and adopted the Appeals Tribunal's decision, with one member dissenting. This appeal follows.

### Point on Appeal

■ In his point on appeal, Employee maintains that the Commission erred in denying him unemployment benefits because Employee did not commit misconduct in that his decision to leave a meeting

with his supervisor in order to attend a prior engagement displayed a lack of judgment, not willful insubordination.

## Standard of Review

We will uphold the award of the Commission if there is sufficient competent and substantial evidence to support the award. *Berwin v. Lindenwood Female College*, 205 S.W.3d 291, 294 (Mo. App. E.D.2006); *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222–23 (Mo.banc 2003). We defer to the Commission's determinations regarding weight of the evidence and the credibility of witnesses. *Berwin*, 205 S.W.3d at 294. Although we defer to the factual findings of the Commission if supported by competent and substantial evidence, the issue of whether an employee's actions constitute misconduct associated with the employee's work is a question of law. *Id.* To the extent an appeal involves questions of law, no deference is given to the Commission. *Id.* As such, whether the Commission's findings support the conclusion that Employee was guilty of misconduct is a question of law, by which we are not bound. *Id.* Whether an employee is discharged for misconduct connected with work is a question of law that this Court reviews *de novo. Williams v. Enterprise Rent–A–Car Shared Services, LLC,* 297 S.W.3d 139, 142 (Mo.App. E.D.2009).

## Discussion

It is Missouri's declared public policy to set aside unemployment reserves for the benefit of individuals unemployed through no fault of their own. Section 288.020.1.[1] The provisions of Section 288.020 *et seq.* are intended to be construed liberally to accomplish the State's public policy. Section 288.020.2. To execute this policy, "[d]isqualifying provisions are construed strictly against the disallowance of benefits." *St. John's Mercy Health System v. Div. of Employment Sec.,* 273 S.W.3d 510, 514 (Mo.banc 2009).

An employee is prohibited from recovering unemployment benefits if he is discharged for misconduct connected with work. Section 288.050.2. "Misconduct" is defined by statute as:

[A]n act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.

Section 288.030.1(23). While an employee generally bears the burden of demonstrating he is entitled to unemployment benefits, the burden shifts to the employer to prove misconduct connected with work when the employer asserts the employee was discharged for misconduct. *Williams,* 297 S.W.3d at 142. The employer must show, by a preponderance of the evidence, that the employee willfully violated the rules or standards of the employer or that the employee knowingly acted against the employer's interest. *Venz v. Convergys Customer Management Group, Inc.,* 326 S.W.3d 554, 557 (Mo.App. E.D.2010).

To satisfy Section 288.030.1(23), the Commission must find that an employee's conduct was willful. *See Wieland v. St. Anthony's Med. Ctr.,* 294 S.W.3d 77, 79 (Mo.App. E.D.2009); *Scrivener Oil Co., Inc. v. Div. of Employment Sec.,* 184 S.W.3d 635, 641 (Mo.App.

---

**1.** All statutory references are to RSMo 2006, unless otherwise indicated.

S.D.2006). An employee's willful violation of the employer's reasonable work rule constitutes misconduct. *Noah v. Lindbergh Inv., LLC,* 320 S.W.3d 212, 216 (Mo. App. E.D.2010).

 There is a vast distinction, however, between the violation of an employer's rule justifying the employee's discharge and the violation of an employer's rule that warrants a finding of misconduct connected to the employee's work. *Williams,* 297 S.W.3d at 144; *Wieland,* 294 S.W.3d at 79; *Venz,* 326 S.W.3d at 557; *White v. Wackenhut Corp.,* 208 S.W.3d 916, 918–19 (Mo.App. E.D.2006). "While poor workmanship, lack of judgment, or irresponsible actions may justify an employee's discharge, 'it does not necessarily provide a basis for disqualifying [an employee] from receiving unemployment benefits.'" *Comeaux v. Convergys Customer Management Group, Inc.,* 310 S.W.3d 759, 763 (Mo.App. E.D.2010), quoting *Scrivener,* 184 S.W.3d at 641. In the absence of evidence that the employee deliberately or purposefully acted, there can be no finding the employee committed an act of misconduct. *Frisella v. Deuster Elec., Inc.,* 269 S.W.3d 895, 900 (Mo.App. E.D.2008).

Here, the Commission found Employee's refusal to remain for the meeting where his attendance was being discussed was unreasonable and a disregard of the standard of behavior which Employer had a right to expect of him and was misconduct as contemplated by the statutory definition.

In the instant case, Employee promptly attended and participated in the meeting with Blind, stayed for ten minutes and answered questions regarding his tardiness on February 9, 2010, even though (1) the meeting was scheduled after Employee's work hours; (2) Employee was only given minutes' notice of Blind's desire to meet with him after work; and (3) Employee had a previously scheduled obligation after work.

During the meeting, Employee indicated to Blind that he would not repeat what he did on Tuesday the 9th, *i.e.,* use all four hours of tardiness that the point allowed him. Employee then told Blind that he had to leave the meeting and that he was running late. Blind told him to remain in his seat, even though he knew Employee had a previously scheduled obligation to which Employee was urgent to attend. Employee said he had to go three times, and Blind told Employee to remain in his seat three times, before Employee excused himself and left the meeting.

We find that Employee's conduct was not a disregard of the standard of behavior which Employer has a right to expect of him. On that Friday, Employee had finished his work day and was not being paid for his time. Blind had only given Employee minutes' notice that he wanted to meet with him after work that day, and did not tell Employee that Blind expected him to reserve a certain amount of time for the meeting. Employee had no advance notice to cancel or reschedule previous after-work obligations. At the Appeals Tribunal hearing, Employee asked Blind why he waited until Friday to talk to Employee about Tuesday's tardy incident. Blind answered, "In all honesty, the attendance problem wasn't that severe in nature. I was, however, needing to give you coaching and counseling on how to handle the situation better the next time that it would happen. So it wasn't anything that needed to happen immediately, but it did need— that conversation did need to happen."

Employee showed good faith in promptly attending the meeting and staying as long as he could, even though it was scheduled (1) at the last minute, (2) after work hours, and (3) was to be of unknown duration. The fact that Employee had a previously scheduled obligation that conflicted

with the meeting does not amount to intent not to stay for the duration of the meeting. See, e.g., *Wackenhut,* 208 S.W.3d at 919 (claimant overslept due to malfunctioning alarm clock, and employer presented no evidence to suggest that claimant was not making a good faith effort to get to work or that her failure to attend work was intentional.). Compare, *Noah,* 320 S.W.3d at 217 (claimant's refusal to meet with manager at all coupled with a failure to show up for work twice constituted misconduct connected with work sufficient to deny unemployment benefits). Employee presented a good reason to leave, in that he was running late for a non-work-related obligation at 3:30 p.m. and he was not on the clock. Furthermore, this was an isolated incident and Blind testified that he never had any problems with Employee before this incident during the almost three years Employee had worked for Employer.

Although Employer is free to consider Employee's actions to be insubordination and thereby relieve him of his duties, Employer failed to meet its burden of showing Employee was discharged for misconduct connected with his work as defined under the statute disqualifying him from unemployment benefits. Employee's point on appeal is therefore granted.

### Conclusion

We find that the Commission erred in finding that Employee's actions amounted to misconduct which disqualified him from receiving unemployment benefits. The Commission's decision is reversed and remanded for proceedings consistent with this opinion.

CLIFFORD H. AHRENS and LAWRENCE E. MOONEY, JJ., concur.