Deborah HAGLER,
Employee/Appellant,

v.

TRUE MANUFACTURING CO., INC.,
Employer/Respondent,

and

Division of Employment Security,
Respondent/Respondent.

No. ED 96190.

Missouri Court of Appeals,
Eastern District,
Division Three.

Sept. 13, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 27, 2011.

Application for Transfer Denied Dec. 20, 2011.

Charles W. Bobinette, St. Louis, MO, For Employee/Appellant.

Michael F. Harris, Chesterfield, MO, For Employer/Respondent.

Jeannie Desir Mitchell, Jefferson City, MO, For Respondent/Respondent.

SHERRI B. SULLIVAN, J.

*Introduction*

Deborah Hagler (Employee) appeals from the award of the Labor and Industrial Relations Commission (the Commission) denying her unemployment benefits. We affirm.

*Factual and Procedural Background*

Employee was employed by True Manufacturing Company, Inc. (Employer) from November 9, 1998 to February 22, 2010, when she was discharged for failing to call Employer to report her absences on two consecutively scheduled work days, February 19 and February 22, 2010.

Employer's attendance reporting policy is that employees who fail to call in and report their absence for two consecutive days between 7:00 a.m. and 3:30 p.m. will be terminated for job abandonment. Employer's orientation guidelines provide, in pertinent part, "If you are going to be absent, you must call the office between the hours of 7:00 a.m. and 3:30 p.m. If you do not call for two consecutive days, you

are assumed quit." Employer informed Employee of the call-in policy and consequences for violating the policy when Employee was hired. Employer explained the policy during orientation, which Employee attended, and the policy was set forth in Employer's Work Rules and Attendance Reporting Policy, which Employee received.

Employee's regular work schedule was 6:55 a.m.–3:25 p.m. In October 2009, Employee was moved to another building and experienced harassment on the job and discrimination, leading to anxiety and depression. Employee sought treatment from her private physician, Dr. Stephen Knapp (Dr. Knapp), who took her off work from November 5, 2009 through November 9, 2009 for acute anxiety. Employee was subsequently absent from January 18, 2010 through February 1, 2010. On January 22, 2010, Employer notified Employee that she had "a lot of unexcused time against her attendance" and "no time to use" and that she may consider applying for Family Medical Leave Act (FMLA) leave. On January 25, 2010, Employee told Employer that she wanted to apply for FMLA.

Under Employer's policy, an employee on approved FMLA leave for a single block of time does not have to call in every day to report the absence. An employee on intermittent FMLA leave is required to call in every day and give a specific reason for the absence so that Employer can credit the day toward approved FMLA leave and know whether or not to expect the employee to report to work that day.

On January 26, 2010, Dr. Knapp's office completed the Certification of Health Care Provider for Employee's Serious Health Condition (medical certification) to support Employee's request for FMLA. The FMLA work certification stated Employee was restricted from working from January 18, 2010 to February 1, 2010. The medical certification also stated that Employee's condition may cause episodic flare-ups that would require Employee to be absent approximately one day a month. Dr. Knapp opined that Employee's condition affected her mood and ability to concentrate and caused fatigue. Dr. Knapp prescribed Lorazepam, Xanax and Lexapro to help Employee relax and sleep.

Employee returned to work for one day on February 2, 2010. Employee did not return to work from February 3 to February 22, 2010.

On February 18, 2010, Employee met with Ashley Lang (Lang), Employer's Assistant Director of Human Resources, and Erin Turner (Turner), another human resources employee, to sign her FMLA paperwork, and was granted leave for a single block of FMLA leave time from January 26, 2010 to February 1, 2010. Employee requested that her absence from February 3 to February 22, 2010 also count towards her FMLA leave entitlement. Employee submitted a note from Dr. Knapp dated February 11, stating that Employee was evaluated on February 11 and was unable to work from February 3 through February 22, 2010, and given a return date of February 23, 2010. The medical certification Employer had on file at that time, which was dated January 26, 2010, estimated that Employee's condition would only require Employee to be absent one day a month. Because Employee's absences were not consistent with the medical certification, Lang told Employee that Employee needed to provide an updated medical certification before the February 3 to February 22, 2010 absences could be officially approved as FMLA leave. Employee was granted conditional intermittent FMLA leave from February 4, 2010 through February 22, 2010, providing

that she had until March 3, 2010 to provide a certificate from her doctor regarding her ongoing need for FMLA leave. However, on the day of the meeting with Lang and Turner, February 18, 2010, Lang and Turner specifically instructed Employee that she needed to call in every day she was absent despite the doctor's note stating that she needed to be absent from February 3 to February 22, 2010.

Lang also told Employee that she was scheduled for a drug screening on February 22, 2010 at 11:00 a.m. Employee did not call to report her absence on February 19 or February 22, 2010, which were two consecutively scheduled work days for Employee. Also, Employee did not tell Employer that she would not be at the February 22, 2010 drug screening. On February 23, 2010, Employee was terminated under Employer's absence reporting call-in policy.

After she was terminated, Employee filed a claim for unemployment benefits. Employer protested on the grounds that Employee knowingly violated its absence reporting call-in policy. At the hearings held on May 20, 2010 and June 8, 2010, Lang testified on behalf of Employer, and Employee testified on her own behalf. Employee admitted that Lang and Turner told her on February 18 that she needed to call in every day despite the doctor's note stating that she needed to be absent from February 3–22. She also admitted that no one told her that she did not need to call in since she had the doctor's note. Employee had asked Lang if she had to call in the day of the meeting, February 18. Lang responded that she did not need to call in that day "because we're having a face to face meeting with you and we can take this as your call in for today but you need to make sure that you call in tomorrow [Feb-

ruary 19] and every day thereafter that you're not going to be here[.]" Employee stated that on February 19 and February 22, between the hours of 7:00 a.m. and 3:30 p.m., she was sleeping due to her medication and medical condition disturbing her sleep pattern, and slept through her alarm.

On March 23, 2010, a deputy for the Missouri Division of Employment Security (Division) found that Employee was disqualified from receiving unemployment benefits pursuant to Section 288.050.2,[1] because Employee was discharged for misconduct connected with work. On March 25, 2010, Employee filed an appeal of the deputy's decision with the Division Appeals Tribunal. On June 17, 2010, the Appeals Tribunal affirmed the disqualification. The Appeals Tribunal specifically found that Employee "knowingly and intentionally violated [Employer's] policy," that Employee received prior warnings regarding reporting absences, and that Employee's "failure to comply with [Employer's] reasonable request for two consecutive work days was a willful disregard of the employer's interest."

On December 22, 2010, the Commission affirmed and adopted the Appeals Tribunal's decision, issuing a supplemental decision to "add certain comments" to the Tribunal's determination that it did not find Employee credible "regarding [her] absence on February 19 and 22," as follows:

> We wish to clarify that we have no doubt that [Employee] was having difficulties that kept her from working on these days, but did not find her credible concerning her inability for two straight work days to take appropriate measures to insure [sic] that she spoke with [E]mployer to report her absences. Espe-

1. All statutory references are to RSMo 2006.

cially in light of [E]mployer's very specific instructions in its conversations with her immediately prior to these days of absence, her explanation is simply inadequate and not credible.

This appeal follows.

## Point on Appeal

In her point on appeal, Employee maintains that the Commission erred in denying her unemployment compensation benefits because its legal conclusion that she engaged in misconduct connected with her work misapplies the law, is unsupported by competent and substantial evidence, and is contrary to the overwhelming weight of the evidence, as reviewable under Section 288.210, in that: (1) requiring Employee to call work and report the reason for her absence while on intermittent family and medical leave for a definite period of time violated her rights under FMLA and applicable FMLA regulations; (2) the Commission's finding that Employee should have done more to ensure she made contact with Employer on February 19 and 22, 2010 is not supported by competent and substantial evidence and does not support the legal conclusion that Employee intentionally violated Employer's interest in having Employee report her absence every day since she was on approved FMLA leave and Employer failed to prove, despite her serious medical condition, Employee was able to call work.

## Standard of Review

■ We will uphold the award of the Commission if there is sufficient competent and substantial evidence to support the award. *Berwin v. Lindenwood Female College*, 205 S.W.3d 291, 294 (Mo. App. E.D.2006); *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222–23 (Mo.banc 2003). We defer to the Commission's determinations regarding weight of the evidence and the credibility of witnesses. *Berwin*, 205 S.W.3d at 294. Although we defer to the factual findings of the Commission if supported by competent and substantial evidence, the issue of whether an employee's actions constitute misconduct associated with the employee's work is a question of law. *Id.* To the extent an appeal involves questions of law, no deference is given to the Commission. *Id.* As such, whether an employee is discharged for misconduct connected with work is a question of law that this Court reviews *de novo. Williams v. Enterprise Rent–A–Car Shared Services, LLC*, 297 S.W.3d 139, 142 (Mo.App. E.D.2009).

## Discussion

■ It is Missouri's declared public policy to set aside unemployment reserves for the benefit of individuals unemployed through no fault of their own. Section 288.020.1. The provisions of Section 288.020 *et seq.* are intended to be construed liberally to accomplish the State's public policy. Section 288.020.2. To execute this policy, "[d]isqualifying provisions are construed strictly against the disallowance of benefits." *St. John's Mercy Health System v. Div. of Employment Sec.*, 273 S.W.3d 510, 514 (Mo.banc 2009).

■■ An employee is prohibited from recovering unemployment benefits if he is discharged for misconduct connected with work. Section 288.050.2. "Misconduct" is defined by statute as:

[A]n act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design or show an intentional and substantial disregard of the employer's interest or of the em-

ployee's duties and obligations to the employer.

Section 288.030.1(23). While an employee generally bears the burden of demonstrating he is entitled to unemployment benefits, the burden shifts to the employer to prove misconduct connected with work when the employer asserts the employee was discharged for misconduct. *Williams*, 297 S.W.3d at 142. The employer must show, by a preponderance of the evidence, that the employee willfully violated the rules or standards of the employer or that the employee knowingly acted against the employer's interest. *Venz v. Convergys Customer Management Group, Inc.*, 326 S.W.3d 554, 557 (Mo.App. E.D.2010). To satisfy Section 288.030.1(23), the Commission must find that an employee's conduct was willful. *See Wieland v. St. Anthony's Med. Ctr.*, 294 S.W.3d 77, 79 (Mo.App. E.D.2009); *Scrivener Oil Co., Inc. v. Div. of Employment Sec.*, 184 S.W.3d 635, 641 (Mo.App. S.D.2006).

■ Here, the Commission found Employee purposefully failed to call Employer and report her absences on the two consecutively scheduled work days of February 19 and February 22, 2010. As set forth above, Employer's policy and rule is that employees are required to call in daily to report their absences unless they have been approved for a continuous period of absence. Employee was well aware of this policy *and* had recently been personally and specifically told to call in on the days in question if she was going to be absent. Employee purposefully did not do so. An employee's willful violation of her employer's reasonable work rule constitutes misconduct. *Noah v. Lindbergh Inv., LLC,* 320 S.W.3d 212, 216 (Mo.App. E.D.2010).

This Court has repeatedly noted the importance of an employee's obligation to properly report any impending absences in accordance with an employer's reasonable policy. See, e.g., *Moore v. Swisher Mower & Machine Co., Inc.,* 49 S.W.3d 731, 739 (Mo.App. E.D.2001); *Tutwiler v. Fin-Clair Corp.,* 995 S.W.2d 497, 500 (Mo.App. E.D.1999); *Kelley v. Manor Grove, Inc.,* 936 S.W.2d 874, 875 (Mo.App. E.D.1997); *G.C. Services Ltd. Partnership v. Labor & Ind. Rel. Com'n,* 913 S.W.2d 411, 416 (Mo. App. E.D.1996); *Garden View Care Center, Inc. v. Labor & Ind. Rel. Com'n,* 848 S.W.2d 603, 606 (Mo.App. E.D.1993). In *Moore*, we found that the employer's rule requiring notification of impending work absences was a reasonable one; deliberate violation of an employer's reasonable work rule constitutes disqualifying misconduct; and failure to report absences for several consecutive days ·amounts to substantial disregard of an employer's interest so as to constitute willful misconduct. *Id.* at 740.

Employee maintains that she was unable to call Employer between the hours of 7:00 a.m. and 3:30 p.m. because she was sleeping throughout that time due to her medication and disturbed sleep schedule due to her illness. The Commission did not believe that Employee was actually *unable* to call in to Employer during this time. In *Moore*, the employee said he was unable to call work because he was incarcerated. We found that although the circumstances related to his incarceration were somewhat difficult, he could have communicated with his employer during November 15 through November 17, but did not do so. *Moore,* 49 S.W.3d at 740. We quoted the Commission's finding with approval that "his decision not to communicate with the employer is an action over which he had control." *Id.*

Likewise, in the instant case, the Commission noted that Employee made no attempt *at any time* to call Employer regarding these absences, even despite the recent warning from Lang and Turner.

The Commission found Employee incredible concerning her "inability for two straight work days to take appropriate measures to insure [sic] that she spoke with employer to report her absences," and found that "[e]specially in light of [Employer's] very specific instructions in its conversations with her immediately prior to these days of absence, her explanation is simply inadequate and not credible."

We defer to the Commission's determinations regarding the credibility of witnesses and weight of the evidence, as well as its factual findings if supported by competent and credible evidence. *Berwin*, 205 S.W.3d at 294. Here, its findings are supported by competent and credible evidence. Employee made no attempt to call in her absences, despite knowing full well the requirement that she do so and the consequences of not doing so. Therefore, she deliberately violated Employer's work rule. The Commission found her explanation that she was unable to call in not credible, a finding to which we defer.

Employee also argues that Employer's call-in policy was inapplicable to her because she was on approved FMLA leave. On January 26, 2010, Dr. Knapp completed a medical certification estimating that Employee would potentially need to be absent one day a month under FMLA. On February 18, 2010, Employee provided Lang a note from Dr. Knapp stating that Employee was going to be absent from work from February 3 to February 22, 2010. This doctor's note was not a medical certification under FMLA and therefore did not give Employee an approved solid block leave of absence inclusive of February 19 and February 22, 2010. Also, it conflicted with the January 26, 2010 medical certification previously provided by Dr. Knapp, which stated that

Employee potentially needed to be absent one day each month.

Because Employee's absences were not supported by an approved FMLA medical certification, Lang told Employee to provide an updated medical certification. Also, because Employee did not have an approved block leave of absence, Lang told Employee she was on intermittent leave and thus to call in daily to report her absences. Pursuant to Employee's own testimony, she knew that she was supposed to call in daily to report her absences. Therefore, her argument that Employer's call-in policy was inapplicable to her because she was on approved FMLA leave is erroneous.

Finally, Employee maintains that Employer's call-in policy violates her rights under FMLA by requiring her to call in. On the contrary, FMLA regulations specifically provide that "[a]n employer may require an employee on FMLA leave to report periodically on the employee's status and intent to return to work." 29 C.F.R. Section 825.309(a); see also *Bacon v. Hennepin County Medical Center*, 550 F.3d 711, 715 (8th Cir.2008) (call-in policy requiring employees on FMLA leave to call in daily to report their absence is permissible). Employers who enforce such policies by firing employees on FMLA leave for noncompliance do not violate the FMLA. See *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 878 (10th Cir. 2004) (employee's failure to adhere to employer's call-in policy defeated her FMLA interference claim) and *Lewis v. Holsum of Fort Wayne, Inc.*, 278 F.3d 706, 710 (7th Cir.2002).

Based on the foregoing, we find there is sufficient competent and substantial evidence in the record to support the Commission's decision denying Employee unemployment benefits due to her being discharged for misconduct connected with

work for failing to call Employer to report her absences on two consecutively scheduled work days, February 19 and February 22, 2010, in violation of Employer's policy and reasonable work rule and in willful disregard of Employer's interest. Employee's point on appeal is denied.

### Conclusion

The Commission's award is affirmed.

ROBERT G. DOWD, JR., P.J., and MARY K. HOFF, J., concur.