**Joshua HISE, Appellant,**

v.

**PNK (RIVER CITY), LLC, and Division of Employment Security, Respondent.**

**No. ED 99082.**

Missouri Court of Appeals, Eastern District, Division Three.

July 9, 2013.

Rehearing Denied Aug. 22, 2013.

Joshua Hise, Farmington, MO, pro se.

Stuart R. Berkowitz, St. Louis, MO, Robert Anthony Bedell, Jefferson City, MO, for respondent.

ROY L. RICHTER, Judge.

Joshua Hise ("Claimant") appeals from the decision of the Labor and Industrial Relations Commission ("Commission") denying Claimant unemployment benefits. Finding no error, we affirm.

## I. BACKGROUND

Claimant was an hourly employee for approximately nineteen months, as a surveillance operator, for Pinnacle Entertainment ("Employer") in St. Louis. He started work on September 21, 2009.

Employer had a "no fault" or "no excuses" attendance policy; the policy did not distinguish between excused and unexcused absences. The attendance policy utilized a point system to keep track of employee absences and tardies. The number of points issued depended on the severity or timing of the infraction. For example, if the employee notified Employer of his anticipated absence, the employee was assigned one point, and any absences on a Friday though Sunday were assessed double points. With regard to tardies, if the employee was less than twenty minutes late, the employee was issued a half point, whereas if the employee was tardy by more than twenty minutes, the employee was assigned one point. This attendance policy provided for warnings at various levels and for termination after the employee accrued ten points.

Claimant was made aware of the Employer's attendance policy on January 13, 2010, and Claimant's first infraction was cited in April 2010. After accruing more than ten points, Claimant was terminated on May 6, 2012.

Thereafter, Claimant applied for unemployment benefits, and on June 11, 2012, a

deputy with the Missouri Division of Employment Security determined that Claimant had been terminated for misconduct and therefore denied benefits. The Appeals Tribunal, in a written opinion, upheld the deputy's decision denying Claimant unemployment benefits.

Claimant appealed to the Commission, which affirmed and adopted the Appeals Tribunal decision finding it to be "fully supported by the competent and substantial evidence on the whole record and ... in accordance with the relevant provisions of the Missouri Employment Security Law."

Claimant now appeals to this Court.

## II. DISCUSSION

Claimant sets forth two points on appeal. In his first point, Claimant charges error in the Commission's decision that Claimant's actions constituted misconduct, in that the Commission, contrary to the law, placed the burden upon the Claimant to prove his absenteeism and tardiness did not constitute misconduct. Second, Claimant argues the Commission erred in concluding that he committed misconduct because the Commission's decision was not supported by competent and substantial evidence.

### Standard of Review

This Court reviews the decision of the Commission pursuant to the standard set forth in Section 288.210.[1] *Turner v. Div. of Emp't Sec.*, 392 S.W.3d 525, 527 (Mo. App.E.D.2013); *see also* Section 288.210. Upon review, an appellate court may modify, reverse, remand for rehearing, or set aside the decision of the Commission upon the following grounds and no other:

(1) That the Commission acted without or in excess of its powers;

(2) That the decision was procured by fraud;

(3) That the facts found by the Commission do not support the decision; or

(4) That there was not sufficient competent evidence in the record to warrant the decision.

*See* Section 288.210; *see also Martin v. Div. of Emp't Sec.*, 384 S.W.3d 378, 381 (Mo.App.E.D.2012). As required by the Missouri Constitution, this Court reviews the entire record to ascertain whether the Commission's decision is supported by competent and substantial evidence. *See* Mo. Const., art. 5, section 18; *see also Fendler v. Hudson Serv.*, 370 S.W.3d 585, 588 (Mo. banc 2012).

While this Court defers to the Commission on issues of fact—so long as they are supported by competent and substantial evidence—we owe no deference to the Commission's conclusions of law or application of the law to the facts, and review such issues *de novo*. *Welsh v. Mentor Mgmt., Inc.*, 357 S.W.3d 277, 280 (Mo.App.E.D.2012). "Whether the Commission's findings support the conclusion that an employee was guilty of misconduct is a question of law." *Frisella v. Deuster Elec., Inc.*, 269 S.W.3d 895, 898 (Mo.App. E.D.2008) (quoting in part *Miller v. Kansas City Station Corp.*, 996 S.W.2d 120, 122 (Mo.App.W.D.1999)) (internal quotation omitted).

### Analysis

**Point I—Burden Was Properly Shifted to Claimant**

Unemployment compensation proceedings are governed by Chapter 288, *et seq.*, the Missouri Employment Security Law. *Dixon v. Div. of Emp't Sec.*, 106 S.W.3d 536, 539 (Mo.App.W.D.2003). Pur-

---

**1.** Unless otherwise indicated, all statutory references are to RSMo Cum.Supp.2012.

suant to Section 288.050.2, unemployment compensation benefits will be denied to a terminated claimant who was "discharged for misconduct connected with the claimant's work[.]" *See* Section 288.050.2. The term "misconduct" has been defined by statute as:

> an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer[.]

*See* Section 288.030.1(23).

▆▆▆ This Court agrees with Claimant, that under Missouri precedent, generally, the burden of proving eligibility for unemployment compensation benefits initially lies with the claimant, but the burden shifts to the employer if termination is premised upon an allegation of misconduct. *Venz v. Convergys Customer Mgmt. Grp. Inc.*, 326 S.W.3d 554, 557 (Mo.App.E.D. 2010). Thus, in such circumstances, the employer, not the claimant, bears the burden of proving by substantial and competent evidence that the claimant was discharged for misconduct connected with work. *Tutwiler v. Fin–Clair Corp.*, 995 S.W.2d 497, 499 (Mo.App.E.D.1999). Accordingly, the employer must demonstrate, by a preponderance of the evidence, "that the employee *willfully* violated the rules or standards of the employer or that the employee knowingly acted against the employer's interest." *Hagler v. True Mfg. Co., Inc.*, 353 S.W.3d 53, 59 (Mo.App.E.D.

2011) (emphasis added); *see e.g., Wieland v. St. Anthony's Med. Ctr.*, 294 S.W.3d 77, 78–79 (Mo.App.E.D.2009) (finding the Commission erred in denying unemployment benefits to a claimant who negligently mislabeled blood types, because such accidents did not show a "willful intent").

However, the disposition of Claimant's first point requires this Court resolve a perceived conflict between Section 288.050.2 and those cases interpreting this statute, and Section 288.050.3 due to the amendment of the latter in 2006.[2] To understand the import of the 2006 amendment, a brief review of Section 288.050.3 and its amendatory history is required.

In 1997, Section 288.050 was amended in House Bill 472 to include a new subsection. *See* Mo. H.B. 472 (1997). Section 288.050.3., RSMo Cum.Supp.1997 stated:

> A pattern of absenteeism or tardiness may constitute misconduct regardless of whether the last incident alone which results in the discharge constitutes misconduct.

*See* Section 288.050.3, RSMo Cum.Supp. 1997.

This Court, in interpreting the 1997 amendment to Section 288.050, held that this new subsection only provided "that the fact-finder may consider a pattern of absenteeism to be misconduct in appropriate circumstances, regardless of the nature of the final incident of absence." *Tutwiler*, 995 S.W.2d at 500. Thus, the general rule remained unaltered: the employer carries the burden of establishing misconduct if termination was premised upon an allegation of misconduct—including absenteeism and tardiness. *Id.* at 459. ("The determination of whether excessive absences are statutory misconduct is a separate consid-

---

**2.** As discussed, *infra,* this Court finds the Commission's denial of unemployment benefits was premised upon Section 288.050.3.

eration from whether an employee violated the absenteeism policy of his employer."); *see e.g., Div. of Emp't Sec. v. Gardner–Denver Mach., Inc.,* 941 S.W.2d 13 (Mo. App.W.D.1997) (employee discharged for absenteeism under a "no-fault" attendance policy was still eligible to receive unemployment benefits because employer failed to evidence employee's willful disregard rising to the level of misconduct); *Kelley v. Manor Grove, Inc.,* 936 S.W.2d 874 (Mo. App.E.D.1997) (employee discharged for absenteeism under a "no-fault" attendance policy was still eligible for unemployment benefits because employee's absences were due to illness which did not constitute misconduct connected with work).

Next, in 2004, Section 288.050.3 was amended in House Bill 1268. *See* Mo. H.B. 1268 (2004). Section 288.050.3, RSMo Cum.Supp.2004 read:

Absenteeism or tardiness may constitute misconduct regardless of whether the last incident alone constitutes misconduct. In determining whether the degree of absenteeism or tardiness constitutes a pattern for which misconduct may be found, the division shall consider whether the discharge was the result of a violation of the employer's attendance policy, provided the employee had received knowledge of such policy prior to the occurrence of any absence or tardy upon which the discharge is based.

*See* Section 288.050.3, RSMo Cum.Supp. 2004.

When called upon to interpret the 2004 amendment, the Missouri Court of Appeals, Western District, held "persistent absenteeism" could constitute grounds for a finding of misconduct, but, nevertheless, the employer contending that a discharge was justified by an employee's work-related misconduct bore the burden of establishing the employee's willfulness rising to the level of misconduct. *Cubit v. Accent Mktg. Serv.,* 222 S.W.3d 277, 281 (Mo.App. W.D.2007); *see also Five Star Mfg. v. Tanksley,* 168 S.W.3d 719, 725 n. 2 (Mo. App.S.D.2005) (Garrison, J., dissenting). Hence, the burden of establishing misconduct premised upon absenteeism or tardiness was, again, unaffected by the 2004 amendment to Section 288.050.3.

Finally, in 2006, in House Bill 1456, Section 288.050.3 was again amended. *See* Mo. H.B. 1456 (2006). As amended and as it currently reads, Section 288.050.3 states:

Absenteeism or tardiness may constitute a *rebuttable presumption of misconduct,* regardless of whether the last incident alone constitutes misconduct, if the discharge was the result of a violation of the employer's attendance policy, provided the employee had received knowledge of such policy prior to the occurrence of any absence or tardy upon which the discharge is based.

*See* Section 288.050.3 (emphasis added).

 The plain and unambiguous language [3] of the 2006 amendment to Section 288.050.3 established a carve-out, or a special provision, to the general rule that the burden of proof shifts to the employer if termination is premised upon an allegation of misconduct. Instead, if the misconduct is predicated upon the employee's absenteeism or tardiness, the burden of proving non-misconduct shifts back to the employee, provided the employee received knowl-

---

**3.** This Court's task "is to give effect to the legislative intent as reflected in the plain language of the statute[.]" *Parktown Imp., Inc. v. Audi of Am., Inc.,* 278 S.W.3d 670, 672 (Mo. banc 2009); *see also Howard v. City of Kansas City,* 332 S.W.3d 772, 779 (Mo. banc 2011) ("The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider words used in the statute in their plain and ordinary meaning.").

edge of such policy prior the occurrence of any absence or tardy upon which the termination was based. *See Johnson v. Div. of Emp't Sec.*, 318 S.W.3d 797, 803 (Mo. App.W.D.2010) ("The General Assembly has recognized the merit of reasonable attendance policies in section 288.050.3 by amending that subsection to allow violation of attendance policies to be considered to be 'misconduct' disqualifying the claimant when the claimant fails to rebut the presumption of misconduct."). Thus, under certain circumstances, where termination of an employee is premised upon misconduct as it relates to an employer's attendance policy, the burden of proof shifts back to the employee, until rebutted, to establish that he or she is entitled to unemployment compensation. *Id.* at 803–04 ("The legislature decided that once the employer has established that there is an attendance policy and proves that the claimant had notice of the policy at the time of all the pertinent absences, and that the claimant still exceeded the allowed absences, the burden shifts to the claimant to show that the claimant was not guilty of 'misconduct.' "). Therefore, under the 2006 amendment, "[a] misconduct analysis allows the circumstances of the absences to be considered, and the statutory presumption shifts the risk of non-persuasion to the claimant under [section] 288.050.3." *Waggoner v. Ozark Anesthesia Assoc. Inc.*, 364 S.W.3d 713, 719, n. 9 (Mo.App.S.D.2012).

Here, Employer presented evidence to raise the rebuttable presumption under Section 288.050.3. Claimant was aware of Employer's attendance policy as evidenced by his signature acknowledging his receipt of the policy on January 13, 2010. Further, Claimant had full knowledge of Employer's attendance policy before an occurrence of any absence or tardy (the first such absence or tardy is denoted as occurring in April 2010). Under Section 288.050.3, this is sufficient to raise the rebuttal presumption. *See* Section 288.050.3. Therefore, the Commission properly shifted the burden onto Claimant to prove his attendance infractions did not constitute misconduct.

In arguing for a contrary result, Claimant relies heavily on the construction of Section 288.050 prior to the incorporation and amendment of subsection 3. In particular, Claimant cites to *Gardner–Denver Machinery, Inc., supra,* and *Manor Grove, Inc., supra.*

In *Division of Employment Security v. Gardner–Denver Machinery, Inc.,* 941 S.W.2d 13 (Mo.App.W.D.1997), the employer utilized a "no-fault absence policy" very similar to the one in the case at bar. *Id.* at 14. The Commission determined the employee had been discharged for misconduct (specifically, the employee's violation of his employer's attendance policy, i.e. excessive absences) connected with work and disallowed benefits. *Id.* On appeal, the Missouri Court of Appeals, Western District, reversed the Commission, holding that "[v]iolation of an employer's absence policy, which may be adequate cause for dismissal, is not, standing alone, necessarily a finding of misconduct connected with work, so as to deny unemployment benefits." *Id.* at 16. In so holding, the *Gardner–Denver Machinery, Inc.* court found that the employer could not meet its burden of proving misconduct under Section 288.050.2, because the employer did not keep track of the reasons for its employee's absences, thus, there was no record from which it could be determined whether the employee was guilty of misconduct. *Id.* at 15.

Similarly, in *Kelley v. Manor Grove, Inc.,* 936 S.W.2d 874 (Mo.App.E.D.1997), the employee was also terminated for excessive absences under the employer's "no-fault absence policy." *Id.* at 878. Due to

the employee's violation of the employer's attendance policy, the Commission denied the employee unemployment benefits, finding such a violation rose to the level of misconduct. *Id.* at 875. Reversing the Commission's decision, this Court held that because at least six of the employee's absences or tardies were related to illness, the employer could not bear its burden of establishing, under Section 288.050.2, the employee was guilty of misconduct because such absences did not constitute "willful and wanton conduct." *Id.* at 876–79.

However, both of these cases—and those of a kindred nature—are of no assistance to Claimant as the 2006 amendment to Section 288.050.3 implicitly abrogated prior case law. The consequence of the 2006 amendment shifted the burden to the claimant to show that the claimant was not guilty of misconduct, "provided the employee had received knowledge of such policy prior to the occurrence of any absence or tardy upon which the discharge is based[,]" thereby, modifying the general rule requiring the employer to satisfy the burden of proving misconduct relating to employee's violation of an employer's attendance policy. *See* Section 288.050.3; *see also Mills v. Dir. of Revenue, State of Mo.,* 964 S.W.2d 873, 875 (Mo.App.E.D. 1998) (noting the principles that when enacting statutes the legislature is presumed to understand the state of the law at time of the statute's enactment, the legislature intended to change the existing law, and the legislature acts with a purpose rather than intending a useless act).

Furthermore, Claimant argues that the Commission's decision was not based on a finding of misconduct under Section 288.050.3, but rather under Section 288.030.1(23). Claimant's contention is false. In its decision denying Claimant unemployment benefits, the Commission wrote:

> The competent and substantial evidence indicates that employer had an attendance policy, the claimant was aware of it, and the claimant violated the policy. The Appeals Tribunal concludes that the employer's attendance policy enjoys the statutory presumption of misconduct when knowingly violated which the claimant must overcome to preserve his qualification for benefits.
>
> The claimant has failed to rebut the statutory presumption of misconduct found in a knowing violation of the employer's attendance policy because the claimant's reasons for his absences were found either not credible or wanting for explanation. [Improper] explanations accounted for a majority of claimant's attendance points.
>
> The employer has met its burden. . . .

Clearly, the Commission's decision denying Claimant unemployment benefits was premised upon Section 288.050.3, not Section 288.030.1(23).

For support, Claimant cites to *Williams v. Enterprise Rent–A–Car Shared Services, LLC,* 297 S.W.3d 139 (Mo.App.E.D. 2009). In *Williams,* the Commission found that the claimant was discharged for misconduct because of excessive absenteeism and tardiness and denied her unemployment benefits because "[C]laimant's significant record of tardies with [E]mployer definitely does indicate a serious disregard by the Claimant of the Employer's interest." *Id.* at 143–44. On appeal, the claimant argued that the Commission erred in finding misconduct for her violation of the employer's attendance policy. *Id.* at 142. In analyzing which provision— Section 288.050.3 or Section 288.030.1(23)—on which to conduct its *de novo* review, this Court declined to accommodate the Division of Employment Security's misconduct argument based on the rebuttal presumption pursuant to Section

288.050.3, saying that the Commission, "as the finder of fact," did not base its finding of misconduct on the presumption. *Id.* at 143–44.

Unlike *Williams*, the Commission in the present case based its decision on a finding of misconduct on the rebuttable presumption pursuant to Section 288.050.3, *supra.*[4] Therefore, the Commission did not err in placing the burden of proof upon Claimant. Point I is denied.

### Point II—Commission's Decision Supported by Substantial & Competent Evidence

■ Claimant's second point on appeal contends the Commission's decision denying him unemployment benefits was not based on competent or substantial evidence that he committed misconduct.

First, we note that Claimant disagrees with certain portions of the Commission's findings of fact. Claimant argues that the Commission's findings that if an employee accrued ten points, the employee was subject to discharge is counterfactual. Claimant contends that the correct number of points was twelve before an employee was subject to discharge. Claimant offers no evidence for his assertion.

■ "Absent fraud, the Commission's factual findings are conclusive and binding if supported by competent and substantial evidence." *Ahearn v. Lewis Cafe, Inc.*, 308 S.W.3d 294, 296–97 (Mo.App.E.D. 2010). In determining whether the facts are supported by substantial and competent evidence, the Court examines the record as a whole. *Comeaux v. Convergys Customer Mgmt. Grp., Inc.*, 310 S.W.3d 759, 762 (Mo.App.E.D.2010).

The Court finds that the Commission's findings of fact are supported by competent and substantial evidence, including the Commission's determination that an employee need only accrue ten points before termination. Incorporated on page three of the Employee Guidebook is the following chart:

| Number of Points | Disciplinary Action |
| --- | --- |
| 4 | First Written Warning |
| 6 | Second Written Warning |
| 8 | Final Warning |
| 10 | Termination |

As there is no other evidence available to indicate otherwise, it cannot be disputed that the Commission's findings of fact were supported by substantial and competent evidence. Termination is a consequence after the accrual of ten points.

Here, Claimant admits that he accrued 10.5 points.[5] Nevertheless, Claimant al-

---

4. Analogous to *Williams*, *McCracken v. Branson Airport, LLC*, 352 S.W.3d 629 (Mo.App. S.D.2011), and *Venz v. Convergys Customer Management Group, Inc.*, 326 S.W.3d 554 (Mo.App.E.D.2010), both found that the Commission's decisions to deny unemployment benefits were based upon findings of misconduct under Section 288.030.1(23), not Section 288.050.3. *McCracken*, 352 S.W.3d 629, 632, n. 4; *Venz*, 326 S.W.3d at 557–58, n. 4. While we agree that if the Commission's finding of misconduct is premised upon Section

288.030.1(23), the burden is on the employer to prove misconduct, we find these cases to be inapposite as, here, the Commission's finding of misconduct was based upon the rebuttable presumption found in Section 288.050.3.

5. Employer cited Claimant with 12.5 points. The Commission found that the Employer incorrectly allocated two additional points. Thus, even when deducting for the two erroneous points, Claimant had still accrued 10.5 points. Claimant does not contest this calcu-

leges that he had valid excuses for several of his absences. *See e.g., Dameron v. Drury Inns, Inc.*, 190 S.W.3d 508, 511 (Mo.App.E.D.2006) ("absences due to illness or family emergency, where properly reported to the employer, do not constitute willful misconduct within the meaning of Section 288.050.2."). Accordingly, Claimant insists the Commission erred in finding he committed misconduct because the Commission's decision was not based on competent and substantial evidence.

However, Claimant's argument is postulated upon Section 288.050.2 and Section 288.030.1(23). As heretofore determined, the Commission's finding of misconduct was actually established under Section 288.050.3. Under Section 288.050.3, we need not determine if Claimant's absences were a willful violation until Claimant rebuts the presumption that he violated Employer's attendance policy. As noted, *supra*, the Commission found Claimant's reasons for his absences "either not credible or wanting for explanation."

 This Court defers to the Commission on determinations regarding weight of the evidence and witness credibility. *Murphy v. Aaron's Auto. Prod.*, 232 S.W.3d 616, 620 (Mo.App.S.D.2007). "When the right to unemployment benefits depends on the acceptance of one of two conflicting testimonies, the issue is one of fact, and the Commission's finding will not be disturbed unless the Commission acted unreasonably or decided the issue contrary to the overwhelming weight of the evidence." *City of Jennings v. Div. of Emp't Sec.*, 943 S.W.2d 330, 335 (Mo.App.E.D. 1997). "Furthermore, where the Commission, as trier of fact, has reached one of two possible conclusions from the evidence, this [C]ourt will not reach a contrary conclusion even if such conclusion might have reasonably been reached." *Id.*

In the case at bar, the Commission did not believe Claimant's reasoning for his absences and we must defer to the Commission's determination. Claimant failed to rebut the presumption under Section 288.050.3. *Johnson*, 318 S.W.3d 797, 808 n. 10 ("If an employer has a 'no fault' policy, which does not distinguish between excusable and non-excusable absence, and if the employer therefore fails to keep track of any reasons given by the employee for an absence, the employer will obviously have a more difficult time proving misconduct than it would under an attendance policy that records fault. But regardless of whether the policy is one of fault or no-fault, if the employer creates the presumption of misconduct, the success of the claimant will then obviously depend on the ability of the claimant to persuade the hearing officer that the absences were not due to the claimant's fault.").[6]

Claimant accrued ten points, which was sufficient for termination and the Commission's decision was supported by substantial and competent evidence. Point II is denied.

### III. CONCLUSION

For the foregoing reasons, the judgment of Commission is affirmed.

---

lation; in fact, Claimant asserts that he, indeed, accrued 10.5 points.

**6.** We find it imperative to note that while *Johnson* offers this Court significant guidance in the interpretation of Section 288.050.3, *Johnson* is distinguishable. 318 S.W.3d at 807. In *Johnson*, the rebuttable presumption of misconduct under Section 288.050.3 did not arise "because the employer did not establish that notice of the attendance policy was provided to the claimant and when the notice was provided." *Johnson*, 318 S.W.3d at 807. Here, it is uncontested Claimant punctually received Employer's attendance policy.

ROBERT G. DOWD, JR., P.J., concurs with separate concurring opinion.

ANGELA T. QUIGLESS, J., concurs in opinion of RICHTER, J., and in separate concurring opinion of DOWD, P.J.

ROBERT G. DOWD, JR., Presiding Judge.

I concur with the opinion of the Court. I write separately, however, to emphasize the manner in which Section 288.050.3 Cum Supp.2007 has reversed the traditional burden to prove misconduct in cases involving attendance policies and to point out an apparent conflict between such a shift in the burden of proof and the public policy of the employment security law as stated in Section 288.020. In the opinion of the Court, we discuss other recent cases interpreting Section 288.050.3 Cum Supp. 2007, but none of the cases have specifically dealt with the policy implications of this amendment.

In 1951, the legislature first enacted the employment security law. Section 288.020, which has never been amended, defines the public policy behind the law. Section 288.020 provides:

1. As a guide to the interpretation and application of this law, the public policy of this state is declared to be as follows: Economic insecurity due to unemployment is a serious menace to health, morals, and welfare of the people of this state resulting in a public calamity. The legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, for compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.

2. This law shall be liberally construed to accomplish its purpose to promote employment security both by increasing opportunities for jobs through the maintenance of a system of public employment offices and by providing for the payment of compensation to individuals in respect to their unemployment.

Thus, since its enactment in 1951, the general purpose of employment security law has been to award employees unemployment compensation, unless an employee falls under one of the exceptions in Section 288.040.

In 1988, the legislature created a new exception for misconduct in Section 288.040.2. The new subsection 2 provided: "A claimant shall be ineligible for waiting week credit or benefits for any week for which the deputy finds he is or has been suspended by his most recent employer for misconduct connected with his work."[7]

Since this new misconduct exception was created in 1988, courts have consistently found where an employer claims that an employee was discharged for misconduct, the employer has the burden of proving misconduct by competent and substantial evidence. *Business Centers of Missouri, Inc. v. Labor and Industrial Relations Com'n,* 743 S.W.2d 588, 589 (Mo.App.E.D. 1988).

Thus, the stated public policy of the statute, which has remained unchanged since 1951, has been consistently reinforced, such that employees have been presumed to be entitled to benefits unless an employer can show otherwise. However, Section 288.050.3 Cum Supp.2007 now provides: "Absenteeism or tardiness may

**7.** Subsection 2 has been subsequently amended to utilize gender neutral language and to add a sentence stating "Suspensions of four weeks or more shall be treated as discharges." However, the statute has not been altered otherwise.

constitute a rebuttable presumption of misconduct...." As we conclude in the opinion of the Court, if an employee violates an employer's attendance policy, the employee now has the burden to prove such a violation was *not* misconduct.

Now, with a mere showing by an employer that an employee has violated its attendance policy,[8] even in instances where the attendance policy is "no fault," the burden is on the employee to prove any instances of tardiness or absenteeism do not amount to misconduct.[9] Therefore, Section 288.050.3 Cum Supp.2007 has to a certain extent upended the public policy of employment security law, which has been unchanged since 1951, as well as the burden to prove misconduct, which has been consistently placed on the employer since the misconduct provision was added to Section 288.040 in 1988.

8. An employer must prove three basic elements: (1) it had an attendance policy; (2) the employee had notice of the policy; and (3) the employee violated the policy.

9. The stated public policy conflicts the most with the amended language when a "no fault" or "no excuses" attendance policy has been implemented, as in this case.