

# In the Missouri Court of Appeals
# Eastern District

### DIVISION TWO

| | | |
|---|---|---|
| CHERYL HIRSCH, | ) | No. ED99945 |
| | ) | |
| Employee/Appellant, | ) | Appeal from the Labor and Industrial |
| v. | ) | Relations Commission |
| | ) | |
| CONVERGYS CUSTOMER | ) | |
| MANAGEMENT GROUP, INC., | ) | |
| | ) | |
| Employer/Respondent, | ) | |
| and | ) | |
| | ) | |
| DIVISION OF EMPLOYMENT | ) | |
| SECURITY, | ) | |
| | ) | |
| Respondent/Respondent. | ) | Filed: February 11, 2014 |

### Introduction

Cheryl Hirsch (Employee) appeals from the decision of the Labor and Industrial Relations Commission (Commission) denying her unemployment benefits. We affirm.

### Factual and Procedural Background

Employee worked full-time as a sales representative for Convergys Customer Management Group, Inc. (Employer) from July 13, 2007 until November 9, 2012, when she was discharged for exceeding the number of times she was allowed to be absent or tardy by Employer's attendance policy. Employer has a no-fault, twelve-month point-based rolling attendance policy that results in discharge once an employee accrues twelve points. This attendance policy is in writing and was signed by Employee when she began

working for Employer. The policy was also explained to Employee when she began working for Employer, as it is to all new employees during their training.

The attendance policy is a no-fault policy, and the only excused absences are jury duty and bereavement. The policy is set up on a "rolling" 365-day timeframe, in that it allows for accumulated points to be "rolled off" after a month with no point accumulation.

Employee's documented attendance history demonstrated she was late or absent twenty-six times in the 365-day period from November 15, 2011 through November 7, 2012, constituting an accumulation of fifteen points. After subtracting the points that "rolled off" during that period, Employee had reached the twelve-point termination point when she was tardy on October 19, 2012, and could have been discharged at that juncture. However, because Employee was tardy due to a traffic accident on the highway, Employer excused it but warned her that her next attendance infraction would result in her discharge. Employee was tardy on November 7, 2012 and was subsequently discharged on November 9, 2012.

On November 15, 2012, Employee filed a claim for unemployment benefits, which Employer protested on November 26, 2012. On December 13, 2012, a deputy (Deputy) with the Division of Employment Security (Division) found Employee was not disqualified from unemployment benefits because the discharge was not for misconduct connected with work. Specifically, the Deputy stated, "The claimant was discharged because of absences. Although the absences exceeded the limit allowed under the employer's policy, the claimant did not willfully violate the policy."

2

On January 14, 2013, Employer appealed the Deputy's decision to the Appeals Tribunal (Tribunal), maintaining that Employee "willfully violated our attendance policy by exceeding the threshold for allowable attendance issues within a 365 day period." On February 7, 2013, the Tribunal conducted a hearing via telephone conference. Employee and Tim Moody (Moody), a "team leader" representing Employer, testified at the hearing. Moody described Employer's attendance policy in detail and testified about Employee's attendance record including her absences and tardies from March 12, 2012 through November 7, 2012, and provided written documentation thereof. Employee testified four of her absences and tardies from March 12, 2012 through November 7, 2012, were caused by legal issues with her son in juvenile court; one absence was necessitated by family issues following her sister-in-law's death; one was due to illness; and the remaining absences and tardies were caused by car trouble.

On February 11, 2013, the Tribunal issued its decision reversing the Deputy's determination and finding Employee was discharged for misconduct connected with work, in that her "behavior was in willful disregard" of Employer's attendance policy which "reasonably seeks to account for its employees during scheduled work."

On March 6, 2013, Employee appealed the Tribunal's decision to the Commission. On April 1, 2013, the Commission affirmed and adopted the Tribunal's decision as its own, finding it to be fully supported by the competent and substantial evidence on the whole record and in accordance with the relevant provisions of the Missouri Employment Security Law. This appeal follows.

Point Relied On

Employee claims the Commission erred in concluding she was discharged from her job for misconduct as a result of violating Employer's attendance policy by being absent and tardy too many times, because there was not sufficient competent evidence to support the award in that the majority of her late arrivals to work were due to transportation issues, and Employer did not submit in its entirety the reasons for her absences and tardies.

Standard of Review

We will uphold the award of the Commission if there is sufficient competent and substantial evidence to support the award. Berwin v. Lindenwood Female College, 205 S.W.3d 291, 294 (Mo.App. E.D. 2006); Hampton v. Big Boy Steel Erection, 121 S.W.3d 220, 222-23 (Mo.banc 2003). We defer to the Commission's resolution of conflicting evidence regarding a factual issue, the weighing of evidence, and witness credibility. Guccione v. Ray's Tree Serv., 302 S.W.3d 252, 256 (Mo.App. E.D. 2010). However, whether an employee's conduct constitutes misconduct connected with work is a question of law, which this court reviews *de novo.* Id. We are not bound by the Commission's conclusions of law or its application of the law to the facts. Difatta-Wheaton v. Dolphin Capital Corp., 271 S.W.3d 594, 595 (Mo.banc 2008).

Discussion

It is Missouri's declared public policy to set aside unemployment reserves for the benefit of individuals unemployed through no fault of their own. Section 288.020.1.[1] An employee is prohibited from recovering unemployment benefits if he is discharged for

---

[1] All statutory references are to RSMo 2012, unless otherwise indicated.

4

misconduct connected with work.  Section 288.050.2.  "Misconduct" is defined by statute as:

> [A]n act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.

Section 288.030.1(23).  While an employee generally bears the burden of demonstrating he is entitled to unemployment benefits, the burden shifts to the employer to prove misconduct connected with work when the employer asserts the employee was discharged for misconduct.  Kleimann v. St. Louis County Cab Co., Inc., 342 S.W.3d 415, 418 (Mo.App. E.D. 2011).  Generally, the employer has the burden of proving by substantial and competent evidence that the claimant was discharged for misconduct.  White v. Wackenhut Corp., 208 S.W.3d 916, 918–19 (Mo.App. E.D. 2006).  The employer must show, by a preponderance of the evidence, that the employee willfully violated the rules or standards of the employer or that the employee knowingly acted against the employer's interest.  Venz v. Convergys Customer Management Group, Inc., 326 S.W.3d 554, 557 (Mo.App. E.D. 2010).  Each category of misconduct requires the employee to willfully violate the employer's rules and standards. Nevettie v. Wal–Mart Associates, Inc., 331 S.W.3d 723, 727 (Mo.App. E.D. 2011).

While traditionally the burden would be on an employer contesting unemployment benefits to prove that the employee's actions leading to her termination were willful thus constituting misconduct, when an employer has a no-fault attendance policy and discharges an employee for its violation, it may elect to contest unemployment

5

benefits under Section 288.050.3's rebuttable presumption of misconduct. This relieves the employer from the burden of "proving misconduct relating to the employee's violation of the employer's attendance policy." Hise v. PNK (River City), L.L.C., 406 S.W.3d 59, 66 (Mo.App. E.D. 2013). Rather, it puts the burden on the employee to establish *non-fault* with regard to her absences.

Section 288.050.3 was amended effective October 1, 2006, to provide that absenteeism may raise a rebuttable presumption of misconduct as follows:

> Absenteeism or tardiness may constitute a rebuttable presumption of misconduct, regardless of whether the last incident alone constitutes misconduct, if the discharge was the result of a violation of the employer's attendance policy, provided the employee had received knowledge of such policy prior to the occurrence of any absence or tardy upon which the discharge is based.

[Emphasis added.] When the employer establishes that notice of the attendance policy was provided to the employee who was fired because of her violation of said policy, misconduct may be presumed and the employer need not adduce any more facts traditionally required to establish misconduct by substantial and competent evidence. Johnson v. Division of Employment Sec., 318 S.W.3d 797, 807 (Mo.App. W.D. 2010). At such point, in order to receive unemployment compensation the employee must rebut the presumption by disproving her violation of the attendance policy amounted to misconduct. Hise, 406 S.W.3d at 65, citing Johnson, 318 S.W.3d at 803-04 ("The legislature decided that once the employer has established that there is an attendance policy and proves that the claimant had notice of the policy at the time of all the pertinent absences, and that the claimant still exceeded the allowed absences, the burden shifts to the claimant to show that the claimant was not guilty of 'misconduct.'"). See also Hise, 406 S.W.3d at 70.

6

Employer established the attendance policy was provided and explained to Employee when she began working for Employer, and she signed the policy. Employer also established that Employee violated the policy by exceeding the allowable number of absences and tardies. The referee and Commission found Employer established the statutory presumption of misconduct under Section 288.050.3.

Once the "burden of proving non-misconduct" or the "risk of non-persuasion of misconduct" shifts back to Employee, the analysis allows the circumstances of her absences to be considered. Hise, 406 S.W.3d at 64-65; see also Waggoner v. Ozark Anesthesia Assoc., Inc., 364 S.W.3d 713, 719, n. 9 (Mo.App. S.D. 2012).

At the hearing, the referee only asked Employee the reasons behind the last 14 separate incidents of lateness or absence over the eight months preceding her discharge, i.e., from March 12, 2012 to November 7, 2012. The analysis was limited in this fashion because the hearing referee determined and the Commission found that Employee did not recall the reasons for her late arrivals prior to March 12, 2012, and Employer did not monitor or record the reasons. The referee determined and the Commission found that from March 12, 2012 to November 7, 2012, Employee had eleven late arrivals in varying degrees of severity. During that time she also had three absences, one due to illness; one due to court; and one due to an unknown reason. The eleven late arrivals and three absences comprised the fourteen most recent incidents reviewed by the referee. Employee stated that three of her late arrivals were due to court appearances for her juvenile son; the late arrival on November 7, 2012, due to an accident on the highway that stopped traffic, which was excused by Employer; the late arrival on August 18, 2012, due to a death of her sister-in-law; and the other six late arrivals due to car trouble.

7

The referee decided and the Commission agreed as a matter of fact that the majority of Employee's late arrivals were due to car trouble. The referee then determined and the Commission agreed that transportation to work was Employee's responsibility as a matter of law. In support of this determination, the referee and Commission relied solely on Woolridge v. Labor and Industrial Relations Commission, 643 S.W.2d 317, 319 (Mo.App. W.D. 1982), which provides in part that "[i]n the absence of contract, custom or a collective bargaining agreement imposing an obligation of transportation on the employer, transportation is usually considered a problem of the employee. It is his responsibility in order to make himself attached to the labor market." The referee and Commission then respectively concluded and concurred that Employee's violation of Employer's attendance policy was misconduct because the majority of her late arrivals were due to transportation issues which were her responsibility.

An "employee's failure to report in as scheduled due to transportation problems does not necessarily or automatically in the abstract mean the employee is guilty of misconduct." Johnson, 318 S.W.3d at 804. The respective courts' analysis of transportation responsibility in Woolridge and Johnson is instructive here, even though said analysis was done in those cases for the distinguishing purpose of determining whether an employee's excessive absenteeism due to car trouble constituted a voluntary quit or misconduct resulting in separation from employment. In the instant case, the determination of whether Employee's excessive absenteeism constituted misconduct is presumed and the issue presented is whether Employee has rebutted said presumption.

> The word 'misconduct,' in contrast to the word 'voluntary,' is defined in Chapter 288. Section 288.030.1(23). We know from that definition that 'misconduct' can include negligence that is of such a degree or recurrence as to be culpable (in other words, conduct in which we recognize fault--

8

fault to which responsibility is assigned). Id. For cases in which the employee is under a reasonable attendance policy and purports to be trying to keep the job, a 'misconduct' analysis based on recurring negligence amounting to culpability would seem to make more sense. Difatta-Wheaton, 271 S.W.3d at 596-97. The issue would be whether the degree of fault amounts to sufficient culpability to warrant a denial of benefits. A misconduct analysis allows the circumstances of the absences to be considered, and the statutory presumption shifts the risk of non-persuasion to the claimant under 288.050.3.

Johnson, 318 S.W.3d at 804-5. Thus, Johnson instructs that after the statutory presumption shifts the burden of persuasion to the claimant under Section 288.050.3, the circumstances of the absences can be considered to determine whether the degree of fault on the part of the claimant amounts to sufficient culpability to warrant a denial of benefits. Id. at 805. If the employee manages to persuade the hearing officer that he or she was the victim of circumstances beyond his or her control, the employee may prevail. Id. at 804.

Here, Employee did not persuade the hearing officer that she was the victim of circumstances beyond her control, in that the explanation she gave for the majority of her late arrivals was something within her control and her responsibility to resolve – her transportation to work. See Johnson, 318 S.W.3d at 804. The referee and Commission found Employee's recurring tardiness due to car trouble amounted to misconduct, in that it happened six times even after warnings. Her *repeated* failure to rectify the transportation problem which caused the majority of her late arrivals or to provide any explanation as to how doing so was beyond her control can fairly be considered by the Commission to be a willful abdication of her responsibility to get to work in a timely fashion, indicating a disregard for her employer's attendance policy. Employee's

recurring negligence amounted to culpability warranting a denial of benefits.  See Id. at 805.

For the foregoing reasons, we find the Commission's decision that Employee failed to overcome the presumption that her violation of Employer's attendance policy constituted misconduct disqualifying her from unemployment benefits to be supported by substantial and competent evidence.  Employee's point on appeal is denied.

Conclusion

The decision of the Commission is affirmed.

_Sherri B. Sullivan_

Sherri B. Sullivan, J.

Lawrence E. Mooney, P.J., and
Robert G. Dowd, Jr., J., concur.