

# Missouri Court of Appeals
## Southern District

### In Division

VALHALLA RESTAURANTS, LLC )
d/b/a MCDONALD'S, )
)
    Employer-Appellant, )
)
vs. )    No. SD38584
)
KIARA PAGE, )    **Filed: January 31, 2025**
)
    Claimant-Respondent, )
)
and )
)
DIVISION OF EMPLOYMENT )
SECURITY, )
)
    Respondent-Respondent. )

APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

**REVERSED AND REMANDED WITH INSTRUCTIONS**

Valhalla Restaurants, LLC d/b/a McDonald's ("Appellant") appeals the decision of the Labor and Industrial Relations Commission ("Commission"), which affirmed and adopted the decision of the Appeals Tribunal ("Appeals Tribunal") of the Division of Employment Security ("Division") holding that Kiara Page ("Claimant") was eligible for unemployment benefits. The Appeals Tribunal found that Claimant was not disqualified based on misconduct connected with work because she was not insubordinate and her

1

relationship with a minor co-worker was based on hearsay. In one point relied on, Appellant argues that the Commission erred in affirming the Appeals Tribunal's decision "because it was against the overwhelming weight of the evidence to determine that Claimant's termination was not for misconduct" when she was "chronically tardy, absent and insubordinate in violation of company policy." Appellant presented competent and substantial evidence that Claimant was discharged for misconduct connected with her work, therefore, the Commission's decision is reversed and the cause is remanded with instructions.

### Factual Background and Procedural History

Claimant began working for Appellant on August 1, 2023, as a crew member at the Nixa/Mt. Vernon McDonald's. Appellant's attendance policy required that the store be notified of any absences two hours prior to the scheduled shift. The policy also required employees to call and notify the store of any tardiness or late arrival. On February 1, 2024, Claimant was suspended from her employment due to multiple violations of Appellant's attendance policy. Prior to her suspension, Claimant had eight instances of unexcused tardiness and two unexcused absences between December 19, 2023, and February 1, 2024. After her February 1, 2024, suspension, Claimant had four additional instances of unexcused tardiness and an on-time rate of 0%. Appellant claimed "[t]he behavior continued after suspension. Per the handbook, termination is the next step."

On March 18, 2024,[1] Claimant was terminated for multiple reasons, including insubordination, an extensive history of tardiness in violation of Appellant's attendance policy for which she was suspended in the past, and maintaining a physical relationship with a minor co-worker. On March 17, 2024, Claimant had a verbal altercation with her supervisor, which ultimately led to her termination.

On March 27, 2024, Claimant filed for unemployment benefits. On April 10, 2024, the Division determined Claimant was disqualified from receiving unemployment benefits due to misconduct connected with her work. Specifically, the Division found that Claimant was discharged due to unprofessional behavior.

Claimant timely appealed that decision, and the Appeals Tribunal conducted a telephone hearing on May 2, 2024. On May 6, 2024, the Appeals Tribunal issued its decision reversing the Division's determination and concluding that Claimant was discharged on March 18, 2024, but not for misconduct connected with work. The Appeals Tribunal made the following findings of fact:

> [C]laimant was discharged because the employer believed [C]laimant had gotten into an argument with her supervisor, and that she was having a relationship with a minor co-worker. There was conflicting evidence and testimony concerning the circumstances leading to [C]laimant's separation. Because the employer's witnesses['] testimony relied solely on the hearsay

[1] We note a discrepancy in the record on appeal regarding the date of Claimant's discharge. The majority of the documents and testimony refer to a discharge date of March 17, 2024, including Appellant's testimony and the Division's initial determination; however, Claimant testified that her last day of work was March 18, 2024, and the Appeals Tribunal referred to March 18, 2024, as the discharge date in its decision, which the Commission affirmed and adopted. At the hearing, Appellant clarified that March 18, 2024, was simply the date the disciplinary form documenting Claimant's discharge was entered into Appellant's computer system. As the Commission affirmed and adopted the decision of the Appeals Tribunal, we will refer to March 18, 2024, as Claimant's discharge date herein.

3

statements of individuals not called to testify during the hearing despite those witnesses being available, the Appeals Tribunal specifically finds the testimony of [C]laimant to be more credible.

[C]laimant did not act in an insubordinate manner on March 17, 2024. Additionally, [C]laimant was not in a relationship with a minor co-worker.

The Appeals Tribunal's decision failed to include any findings regarding Claimant's tardiness and absenteeism. Appellant appealed that decision to the Commission, and the Commission affirmed the decision of the Appeals Tribunal on June 14, 2024. This timely appeal followed.

## Point on Appeal

Standard of Review

The Missouri Constitution guarantees the right of judicial review of administrative decisions affecting the substantive rights of individuals. Mo. Const. art. V, § 18. Section 288.210 governs judicial review of Commission decisions:

> Within twenty days after a decision of the [C]ommission has become final . . . any party aggrieved by such decision may appeal the decision to the appellate court . . . . Upon appeal no additional evidence shall be heard. The findings of the [C]ommission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the [C]ommission on the following grounds and no other:
>
> (1) That the [C]ommission acted without or in excess of its powers;
> (2) That the decision was procured by fraud;
> (3) That the facts found by the [C]ommission do not support the award; or
> (4) That there was no sufficient competent evidence in the record to warrant the making of the award.

Section 288.210.[2] This Court reviews the Commission's decision to determine if it is "supported by competent and substantial evidence upon the whole record." **Humphrey v.**

---

[2] All references to statutes are to RSMo 2016, unless otherwise specified.

***Tramar Contracting, Inc.***, 669 S.W.3d 151, 153 (Mo. App. E.D. 2023) (quoting ***Lexow v. Boeing Co.***, 643 S.W.3d 501, 504 (Mo. banc 2022)). We do not view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award. ***Hampton v. Big Boy Steel Erection***, 121 S.W.3d 220, 223 (Mo. banc 2003). No additional evidence will be heard on appeal, and in the absence of fraud, "the findings of fact made by the [C]ommission within its powers shall be conclusive and binding." Section 287.495.1. We only set aside a decision on appeal if there is "no substantial and competent evidence to support it or if it is clearly contrary to the overwhelming weight of the evidence." ***Mader v. Rawlings Sporting Goods, Inc.***, 73 S.W.3d 83, 85 (Mo. App. S.D. 2002) (quoting ***Dunn v. Hussman Corp.***, 892 S.W.2d 676, 680-81 (Mo. App. E.D. 1994)). "An award that is contrary to the overwhelming weight of the evidence is, in context, not supported by competent and substantial evidence." ***Hampton***, 121 S.W.3d at 223. "When, as here, the Commission adopts the decision of the Appeals Tribunal as its own, we consider the Appeals Tribunal's decision to be the Commission's decision for the purposes of our review." ***Miller v. Div. of Emp. Sec.***, 670 S.W.3d 444, 448 (Mo. App. W.D. 2023) (citing ***Ekres v. Div. of Emp. Sec.***, 641 S.W.3d 411, 417 (Mo. App. W.D. 2022)).

Appellate courts defer to the Commission on "issues involving the credibility of witnesses and the weight given to testimony." ***Jackson v. Walgreen Co.***, 516 S.W.3d 391, 394 (Mo. App. E.D. 2017) (quoting ***Johnson v. Denton Constr. Co.***, 911 S.W.2d 286, 288 (Mo. banc 1995)); *see also* ***Nickless v. Saint Gobain Containers, Inc.***, 350 S.W.3d 871, 873 (Mo. App. E.D. 2011) (holding that the Commission's determination on whether one witness account was more credible is binding on review). "The question of

5

whether the Commission's findings support the conclusion that an unemployment compensation claimant engaged in disqualifying misconduct connected with his or her work is a question of law subject to de novo review." *Tavenner v. Presbyterian Manors, Inc.*, 601 S.W.3d 583, 586 (Mo. App. S.D. 2020) (citing *Fisher v. Ste. Genevieve Cnty. Health Dep't*, 561 S.W.3d 857, 860 (Mo. App. E.D. 2018)).

Analysis

Appellant contends the Commission erred in finding Claimant's actions did not constitute misconduct connected with her work. "A claimant for unemployment compensation benefits bears the burden of proving her eligibility for such benefits." *Thiemann v. Parkway School Dist.*, 655 S.W.3d 460, 464 (Mo. App. E.D. 2022) (quoting *Mack v. Labor & Indus. Rels. Com'n*, 807 S.W.2d 688, 690 (Mo. App. W.D. 1991)). A claimant is not entitled to unemployment compensation benefits when they were discharged for misconduct connected with their work. *Hise v. PNK (River City), LLC*, 406 S.W.3d 59, 63 (Mo. App. E.D. 2013) (citing section 288.050.2). However, where an employer argues that a claimant was discharged for misconduct, the burden shifts to the employer to prove the alleged misconduct connected to the work. *Croy v. Div. of Emp. Sec.*, 187 S.W.3d 888, 892 (Mo. App. S.D. 2006).

Misconduct is defined under section 288.030.1(23):

(23) "**Misconduct**", only as the term is used in this chapter, conduct or failure to act in a manner that is connected with work, regardless of whether such conduct or failure to act occurs at the workplace or during work hours, which shall include:

(a) Conduct or a failure to act demonstrating knowing disregard of the employer's interest or a knowing violation of the standards which the employer expects of his or her employee;

6

(b) Conduct or a failure to act demonstrating carelessness or negligence in such a degree or recurrence as to manifest culpability, wrongful intent, or a knowing disregard of the employer's interest or of the employee's duties and obligations to the employer;

(c) A violation of an employer's no-call, no-show policy; chronic absenteeism or tardiness in violation of a known policy of the employer; or two or more unapproved absences following a written reprimand or warning relating to an unapproved absence unless such absences are protected by law;

(d) A knowing violation of a state standard or regulation by an employee of an employer licensed or certified by the state, which would case the employer to be sanctioned or have its license or certification suspended or revoked; or

(e) A violation of an employer's rule, unless the employee can demonstrate that:
(a) He or she did not know, and could not reasonably know, of the rule's requirements;
(b) The rule is not lawful; or
(c) The rule is not fairly or consistently enforced[.]

Section 288.030.1(23). Misconduct, under this section, generally requires "willful intent or conscious disregard of the employer's rules" and evidence that "a claimant willfully violate[d] the rules or standards of employer and that [her] actions were not simply the result of poor workmanship, lack of judgment, or an inability to do the job." *Rush v. Kimco Corp.*, 338 S.W.3d 407, 411-12 (Mo. App. W.D. 2011) (quoting *Hoover v. Cmty. Blood Ctr.*, 153 S.W.3d 9, 13 (Mo. App. W.D. 2005) (internal quotations omitted)). An employee deliberately disregarding an employer's reasonable directive may constitute misconduct, barring a claimant from recovering unemployment benefits. *Dixon v. Stoam Indus., Inc.*, 216 S.W.3d 688, 693 (Mo. App. S.D. 2007). Likewise, "[c]onduct which 'disregards the standard of behavior that an employer has a right to expect' constitutes misconduct." *Id.* (quoting *Simpson Sheet Metal, Inc. v. Labor & Indus. Rels. Comm'n*, 901 S.W.2d 312, 314 (Mo. App. S.D. 1995)). Therefore, "[a] single instance of

7

intentional disobedience of an employer's directive can constitute misconduct." ***Finner v. Americold Logistics, LLC***, 298 S.W.3d 580, 584 (Mo. App. S.D. 2009). A finding of misconduct under any one of the four definitions included in section 288.030.1(23) is sufficient to disqualify a claimant from benefits. ***Tamko Bldg. Products, Inc. v. Pickard***, 443 S.W.3d 68, 73 (Mo. App. S.D. 2014) (citing ***Ernst v. Sumner Group, Inc.***, 264 S.W.3d 669, 672 (Mo. App. E.D. 2008)).

Here, Appellant argues that substantial, competent evidence on the record supports a finding that Claimant was discharged for misconduct connected with her work. Appellant points to Claimant's frequent violations of the attendance policy and multiple other policies, claiming that the violations of the attendance policy alone constitute misconduct mandating denial of unemployment benefits. Appellant claims that the burden to prove misconduct was sufficiently met, and that the overwhelming evidence undisputedly supports that Claimant was discharged for misconduct under subsections (a) and (c) of section 288.030.1. Because a finding of misconduct under any one of the four definitions constituting misconduct is sufficient, we limit our analysis to the third definition under (c); namely, whether Claimant's chronic absenteeism or tardiness was in violation of a known policy of the employer. ***Ernst***, 264 S.W.3d at 672. We determine it was.

To prove misconduct under section 288.030.1(23)(c), Appellant must have established "(1) a violation of the employer's no-call, no-show policy; (2) chronic absenteeism or tardiness in violation of a known policy of the employer; or (3) two or more unapproved absences following a written reprimand or warning relating to a previous unapproved absence." ***Ausley v. CCL Label (St. Louis), Inc.***, 513 S.W.3d 390,

395 (Mo. App. E.D. 2017). "[E]mployers do not have a heavy burden to prove that an employee committed attendance-related misconduct. . . . Misconduct related to chronic absenteeism or tardiness requires only that the employee have knowledge of the attendance policy which she has violated." *Miller*, 670 S.W.3d at 452 (internal quotations and citations omitted). Particularly in the case of absenteeism and tardiness, misconduct need not even be intentional. *Reliford v. Div. of Emp. Sec.*, 613 S.W.3d 82, 86 (Mo. App. W.D. 2020).

> Absenteeism or tardiness *may* constitute a rebuttable presumption of misconduct . . . if the discharge was the result of a violation of the employer's attendance policy, provided the employee had received knowledge of such policy prior to the occurrence of any absence or tardy upon which the discharge is based.

*Hirsch v. Convergys Customer Mgmt. Group, Inc.*, 422 S.W.3d 525, 529 (Mo. App. E.D. 2014) (quoting section 288.050.3). Where the employer provides notice of the attendance policy to the employee who was terminated based on their violation of such policy, misconduct can be presumed and no other facts are necessary to establish misconduct by substantial and competent evidence. *Id.* (citing *Johnson v. Div. of Emp. Sec.*, 318 S.W.3d 797, 807 (Mo. App. W.D. 2010)).

Appellant, in its initial "Separation Information" form filed in response to Claimant's claim for unemployment benefits, asserted that Claimant was discharged due to misconduct connected with her work. Appellant cited insubordination, Claimant's relationship with a minor co-worker, and her ongoing excessive tardiness and absences, as the misconduct for which Claimant was discharged. Specifically related to Claimant's tardiness, it stated that Claimant "ha[d] an extensive history of tardiness for which she has been suspended in the past. The behavior continued after suspension. Per the

9

handbook, termination is the next step."  Appellant then presented unchallenged competent and substantial evidence at the telephone hearing before the Appeals Tribunal that a substantial reason for Claimant's discharge, in addition to insubordination and Claimant's relationship with a minor co-worker, was her ongoing excessive tardiness and absences.

During the telephone hearing, it was established Claimant was employed by Appellant from August 1, 2023, until March 18, 2024.  Multiple business records of Claimant titled "Disciplinary Action Form" were admitted into evidence without objection at the hearing.[3]  These disciplinary forms showed Claimant's first write up for tardiness was on December 19, 2023.  Between that time and her discharge, the records reflected she had 12 total instances of unexcused tardiness and two unexcused absences.  One disciplinary form showed Claimant received a scheduled suspension due to excessive tardiness for the week of February 7, 2024 to February 13, 2024, a little over a month prior to her discharge.  Appellant's owner, Daphne Stewart, testified that Claimant was discharged for insubordination stemming from multiple acts, including "excessive tardiness for which she had already been suspended and continued to be tardy to nearly every shift after that."  Ms. Stewart testified Appellant had an attendance policy which provides:

> [Y]ou must call in two hours before your shift, if you're going to call in for the day; and if you're going to be late, you must call the store to notify them. Um, after three tardies, you can technically be placed on a probationary period. Um, she had . . . over 30, I'm not even sure how many, not all of them were written up, but, um, she was placed on suspension at one point

---

[3] "The business records exception allows the admission of evidence without the necessity of producing as witnesses those individuals who made the entries of record."  *In re Est. of Newman*, 58 S.W.3d 640, 647 (Mo. App. W.D. 2001).

for tardiness, and then, came back from suspension and continued to have a 0% on[-]time rate to work.

Claimant also testified at the hearing, but provided no testimony regarding her attendance and tardiness issues, leaving Appellant's evidence on this issue uncontroverted.

Despite the sufficient competent evidence in the record regarding Claimant's chronic tardiness and absenteeism, the Commission, in adopting the decision of the Appeals Tribunal, did not consider any evidence regarding Claimant's tardiness and absenteeism in its entirety when making its findings and determination in this case. The Commission's decision is completely devoid of any finding of fact or conclusion of law applying these unchallenged facts regarding Appellant's consistent contention that Claimant was discharged for absenteeism and tardiness, which constituted misconduct under section 288.030.1(23)(c). Instead, the Commission found:

> The claimant was discharged because the employer believed the claimant had gotten into an argument with her supervisor, and that she was having a relationship with a minor co-worker. There was conflicting evidence and testimony concerning the circumstances leading to the claimant's separation. Because the employer's witnesses['] testimony relied solely on the hearsay statements of individuals not called to testify during the hearing despite those witnesses being available, the Appeals Tribunal specifically finds the testimony of the claimant to be more credible.
> 　　The claimant did not act in an insubordinate manner on March 17, 2024. Additionally, the claimant was not in a relationship with a minor co-worker.

Without making any findings on the issue of Claimant's tardiness and absenteeism, the Commission then determined:

> The employer has not met its burden in this case, as the employer has failed to show that the claimant committed the actions that led to the discharge. The employer discharged the claimant because the employer believed that the claimant was insubordinate and was in a relationship with a minor co-worker; however, the employer has failed to put forth competent and

11

substantial evidence showing that the claimant committed those actions. Instead, the credible evidence shows that the claimant did not commit those actions. As a result, the claimant's actions do not rise to the level of misconduct for purposes of the Missouri Employment Security Law.

While the Commission is entitled to weigh the evidence when making its decision, its failure to consider uncontroverted evidence of Claimant's absenteeism and tardiness reveals that the Commission's decision is against the weight of the evidence here. The record in this case includes competent and substantial evidence that Claimant committed "misconduct" rendering her ineligible for benefits. *See* section 288.030.1(23)(c). Appellant established Claimant's chronic absenteeism or tardiness was in violation of a known policy of the employer to satisfy its burden in this case and that Claimant was informed of the policy and her violations. Claimant knew of the policy, because she received a suspension for her multiple violations of the policy. After Claimant was suspended from work for excessive tardiness, she received four additional violations and maintained a 0% on-time rate for work.

The Division argues in its brief that because the "final act" leading to Claimant's discharge was Claimant's altercation with her manager, the Commission did not err in evaluating *only* the final act and finding her actions did not rise to the level of misconduct required to deny her employment benefits. The Division cites ***Menley v. JJF & C, LLC***, to support its argument. In ***Menley***, however, the court examined which party committed the "final act" of termination to determine whether the employee was discharged by the employer or voluntarily resigned, not whether the "final act" constitutes misconduct. 637 S.W.3d 687, 690 (Mo. App. E.D. 2021). The question regarding termination versus resignation is not at issue here. It is undisputed that Appellant discharged Claimant involuntarily. The only issue is whether Claimant was discharged for misconduct

12

connected with her work which disqualifies her from receiving employment benefits. Further, it is common for employers to discharge employees for multiple reasons. There is no legal basis for the Division's conclusion that only the act immediately preceding termination should be considered when determining if an employee was discharged for misconduct connected with her work, and we decline to so hold that here.

"An award that is contrary to the overwhelming weight of the evidence is, in context, not supported by competent and substantial evidence." *Harris v. Ralls Cnty.*, 588 S.W.3d 579, 594 (Mo. App. E.D. 2019) (quoting *Greer v. SYSCO Food Servs.*, 475 S.W.3d 655, 664 (Mo. banc 2015)). "This Court 'must determine whether the Commission reasonably could have made its findings and reached its result based upon all of the evidence before it.'" *Porter v. RPCS, Inc.*, 402 S.W.3d 161, 171 (Mo. App. S.D. 2013) (quoting *Fitzwater v. Dept. of Pub. Safety*, 198 S.W.3d 623, 627 (Mo. App. W.D. 2006)). Here, the Commission did not reasonably make its findings and reach its result based upon all of the evidence that did not require a credibility determination. The Commission's award is contrary to the overwhelming weight of the evidence, and thus not supported by competent and substantial evidence. Moreover, to reach its result, the Commission did not consider the uncontroverted, competent and substantial evidence of Claimant's excessive tardiness which constitutes misconduct. That evidence showed Appellant provided notice of the attendance policy to Claimant, Claimant was suspended from work prior to discharge for violation of that policy, upon return to work Claimant received four additional violations of that policy and had a 0% on-time rate, and Claimant was terminated based on her violation of such policy, among other reasons. Therefore, misconduct can be presumed and no other facts are necessary to establish misconduct by

substantial and competent evidence.  *See **Hirsch***, 422 S.W.3d at 529 (citing ***Johnson***, 318 S.W.3d at 807).  Appellant met its burden to prove Claimant was discharged for misconduct connected with her work under section 288.030.1(23)(c).

### Conclusion

Substantial, competent (and undisputed) evidence on the record as a whole supports a finding that Claimant engaged in misconduct connected with her work under section 288.030.1(23) and that the Commission's decision to affirm the Appeals Tribunal was against the overwhelming weight of the evidence.  The Commission's decision is reversed and the matter is remanded with instructions to the Commission to deny Claimant's application for unemployment benefits.

JENNIFER R. GROWCOCK, C.J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

DON E. BURRELL, J. – CONCURS